**A & E SUPPLY COMPANY, INC., Appellee,**

v.

**NATIONWIDE MUTUAL FIRE INSURANCE COMPANY, Appellant.**

**A & E SUPPLY COMPANY, INC., Appellant,**

v.

**NATIONWIDE MUTUAL FIRE INSURANCE COMPANY, Appellee.**

Nos. 85–1759(L), 85–1780.

United States Court of Appeals, Fourth Circuit.

Argued Feb. 6, 1986.

Decided Aug. 15, 1986.

Rehearing and Rehearing En Banc Denied Sept. 26, 1986.

W. Charles Waddell, III and S.D. Roberts Moore (Guy M. Harbert, III, Gentry, Locke, Rakes & Moore, Roanoke, Va., Howard C. McElroy, White, Elliott & Bundy, Abingdon, Va., on brief) for appellant/cross-appellee;

Eugene K. Street (Thomas R. Scott, Jr., Street, Street, Street, Scott & Bowman, Grundy, Va., on brief), for appellee/cross-appellant.

Before ERVIN and WILKINSON, Circuit Judges, and HOUCK, United States District Judge for the District of South Carolina, sitting by designation.

WILKINSON, Circuit Judge:

This case presents a familiar problem in insurance law. The insured sustained a financial loss for which the policy promised indemnification. The insurer denied coverage, contending without factual support that the insured was responsible for the catastrophe. In the subsequent lawsuit, the insured recovered the proceeds due and also received punitive damages, which it had sought on the theory that the insurer's breach constituted several independent, wilful torts. The insurer now appeals from this punitive, noncontractual award. We find that the insured did not prove the alleged fraud or the alleged conversion and that Virginia law would not recognize either the tort of bad faith refusal to honor a first-party insurance obligation or an implied private right of action under the state's unfair insurance practices statute. We therefore reverse that portion of the judgment awarding punitive damages.

I.

In the late evening of October 27 and the early morning of October 28, 1980, a fire completely destroyed the building of the A & E Supply Company, a mining equipment business in Buchanan County, Virginia. Owned and operated by brothers Larry Fletcher and Terry Lee Fletcher, A & E had purchased from the Nationwide Mutual Fire Insurance Company a policy that provided $150,000 in protection for the building and $250,000 in protection for its contents. A & E immediately notified Nationwide of the loss and gave to Nationwide what invoices, receipts, and tax returns had survived the fire. Nationwide examined these documents and investigated the events of October 27–28. On March 12, 1981, Nationwide unreasonably refused to pay A & E, charging that the Fletchers had intentionally set the fire.

Nationwide did not relay its unfounded suspicions to law enforcement authorities for proper investigation, an admitted violation of the Arson Reporting Immunity Act. Va. Code § 27–85.3 et seq. Nationwide did, however, tell the creditors of A & E that the Fletchers had burned the building to collect on their insurance policy. These allegations severely limited the Fletchers' access to credit while Nationwide's cancellation of all A & E policies limited the Fletchers' access to insurance and Nationwide's refusal to return the A & E documents limited the Fletchers' access to information. Together the actions prevented resuscitation of the mine supply business and pressured the Fletchers to settle the A & E insurance claim quickly and unfavorably.

Instead, A & E sued Nationwide for breach of the insurance contract, conversion of the business records, acquisition of the records by false pretenses, fraud, slander, trespass, intentional infliction of emotional distress, bad faith dishonor of a first-party insurance obligation, and violation of the Virginia Unfair Insurance Practices Act, Va.Code § 38.1–49 et seq.[1] Because

---

**1.** Title 38.1 of the Virginia Code defined the relations of insured and insurer at the time of the coverage denial and the ensuing complaint. Virginia has since repealed Title 38.1 and substi-

tuted a new insurance code in Title 38.2 of the Virginia Code, effective July 1, 1986. Under Va.Code § 1–16, this repeal does not "in any way whatever ... affect ... any right accrued,

Nationwide had· in May 1981 remitted $66,000 on the policy to the co-insured Borg-Warner Acceptance Corporation, the district court held that Nationwide had waived its arson defense, and the court accordingly granted a partial summary judgment of liability on the contract claim. *A & E Supply Co. v. Nationwide Mutual Fire Insurance Co.*, 589 F.Supp. 428 (W.D.Va.1984). Nationwide does not appeal from this ruling. Also before trial, the district court dismissed as improperly pleaded the A & E claims of slander, trespass, and intentional infliction of emotional distress. A & E does not appeal from those rulings.

From May 30, 1984 to June 12, 1984, a jury in the Western District of Virginia heard testimony and arguments about the compensatory damages due on the policy and about the punitive damages sought on the basis of Nationwide's conduct. The jury returned a directed verdict for $32,069.79 in coverage on the stipulated value of the building and returned a verdict for $188,966.09 in coverage on the contested value of the inventory. The jury also found in special verdicts that Nationwide had converted the business records of A & E, had obtained these records by false pretenses, had committed fraud, had acted in bad faith, and had engaged in unfair trade practices. Finding further that Nationwide had been malicious, the jury granted the request of A & E for $500,000 in punitive damages.[2]

Nationwide moved on all counts for a new trial or for judgment notwithstanding the verdict. The district court conditionally granted a new trial on the count pertaining to the state unfair trade practices act and granted judgment notwithstanding the verdict on the count alleging fraud. The court denied all of Nationwide's other motions. *A & E Supply Co. v. Nationwide Mutual Fire Insurance Co.*, 612 F.Supp. 760 (W.D. Va. 1985).[3] Nationwide now concedes the judgment for compensatory damages, costs, and interest. It appeals from the judgment for punitive damages.

## II.

Damages for breach of contract in Virginia normally "are limited to the pecuniary loss sustained." *Kamlar Corporation v. Haley*, 224 Va. 699, 299 S.E.2d 514, 517 (1983), *quoting Wright v. Everett*, 197 Va. 608, 90 S.E.2d 855, 860 (1956). The measure of damages is related to the exchange of risk and obligation in the agreement itself. The duty of each party toward the other is what that party has promised and covenanted. In a sense, each party has contracted for some outer limit to its liability.

It would skew the predictability necessary for stable contractual relations if a breaching party were suddenly subject to the more open and unanticipated duties and damages imposed by the law of tort. Most courts, and certainly Virginia courts, have

or claim arising before the new law takes effect." Our decision therefore addresses the rights of A & E under Title 38.1.

**2.** A & E had moved under Fed.R.Civ.P. 15(a) to amend its complaint in order to ask for more punitive damages, a request that the district court denied and that A & E now pursues on appeal. We do not address this assignment of error, however, because of our conclusion that A & E was entitled to no punitive damages.

**3.** At the same time, A & E had moved under Fed.R.Civ.P. 60(b)(6) for relief from the judgment preventing recovery of its attorneys' fees pursuant to Va. Code § 38.1–32.1. The court denied this petition on the reasoning that § 38.1–32.1 applied to an "individual" who is a natural person but did not extend to corpora-

tions. *A & E Supply Co. v. Nationwide Mutual Fire Insurance Co.*, 612 F.Supp. 760, 776–777 (W.D.Va.1985). The Virginia General Assembly, however, has subsequently stated that "'Individual,' as used in this section, shall mean and include any person, group, business, company, organization, receiver, trustee, security, corporation, partnership, association, or governmental body, and this definition is declaratory of existing policy." Va. Code § 38.2–209. This legislative construction of Va. Code § 38.1–32.1 is entitled to significant weight in the interpretation of an ambiguous statute. *Cf. Seatrain Shipbuilding Corp. v. Shell Oil Co.*, 444 U.S. 572, 596, 100 S.Ct. 800, 813, 63 L.Ed.2d 36 (1980). On its authority, we reverse the decision that A & E is ineligible under § 38.1–32.1 and remand to the district court for further consideration of attorneys' fees.

thus not recognized an exception to the general rule of damages, even when the breaching party acts with an alleged malicious motive. The circumstances surrounding the dissolution of contractual relations are so frequently beset by strain and suspicion that perceptions of improper motive on the part of an opposing party are commonplace. Breach of contract would thus routinely give rise to an action in tort, with its attendant incentive of a punitive award. The Virginia Supreme Court has noted that "the overwhelming weight of authority continues to resist this tendency." *Kamlar Corp. v. Haley*, 299 S.E.2d at 517.

The general rule of contractual damages in Virginia admits but one exception. Only if the breach establishes the elements of "an independent, wilful tort," may it support an award of punitive damages. *Id.* In this case, the societal interest in the deterrence and punishment of wrongdoing may be implicated apart from any breach of contract. Viewed from this perspective, an "independent tort" is one that is factually bound to the contractual breach but whose legal elements are distinct from it.

A & E Supply has sought in this litigation to establish "an independent, wilful tort" on the part of Nationwide and to place itself within the exception. It argues that the jury and the district court correctly identified two such independent wilful torts—conversion and bad faith refusal to pay a first-party insurance claim—and contends that the district court erred in overturning the jury on two others—fraud and violation of the Virginia Unfair Insurance Practices Act. While we sympathize with the plight of plaintiff and agree with the district court that the conduct of Nationwide Mutual Fire Insurance Company was discreditable, we cannot find in the above litany of torts one that both applies to the circumstances of this case and that Virginia law would recognize as an independent basis for the award of punitive damages.

### III.

A & E first seeks to uphold the award of punitive damages through proof of the fa-

miliar independent, wilful torts of fraud and conversion. Virginia law defines actual fraud as the knowing misrepresentation of a material fact to another person, whose reasonable reliance on the misrepresentation results in damage. *Packard Norfolk, Inc. v. Miller*, 198 Va. 557, 95 S.E.2d 207, 210 (1956). "The general rule is that fraud must relate to a present or a pre-existing fact, and cannot ordinarily be predicated on unfulfilled promises or statements as to future events." *Soble v. Herman*, 175 Va. 489, 9 S.E.2d 459, 464 (1940). A plaintiff may recover for actual fraud by showing reasonable reliance on a promise made by a defendant who had no intention of performing, *Colonial Ford Truck Sales, Inc. v. Schneider*, 228 Va. 671, 325 S.E.2d 91 (1985), but the plaintiff must prove all of the elements of fraud by clear and convincing evidence, *Martin v. Williams*, 194 Va. 437, 73 S.E.2d 355, 359 (1952).

That evidence is absent here. A & E argues that Nationwide's agent made fraudulent misrepresentations immediately after the fire to Larry Fletcher that "I think we can help you" and that Nationwide might "possibly" pay quickly on the claim. A & E also says that it entrusted its records to Nationwide in the belief that "as quick as they can get these records established, that they would have a settlement, or a partial settlement for us to where we could get back in business quickly." But such tentative statements to Larry Fletcher, made soon after the fire had ended and the investigation had begun, were more perfunctory reassurances than promises of payment. As the district court noted, A & E could not reasonably have relied on a belief that Nationwide had at this early point made any decision on the claim. Furthermore, the delivery of the A & E documents to Nationwide was required by the insurance contract and did not demonstrate reliance on the insurer's preliminary expectations of coverage. The district court properly concluded that the evidence failed to substantiate the allegations of fraud.

A slightly different path leads to the same conclusion about the allegations of

conversion.[4] A & E did prove that Nationwide had, in withholding A & E documents, wrongfully interfered with the company's rights to its own business records. *Cf. Buckeye National Bank v. Huff & Cook,* 114 Va. 1, 75 S.E. 769, 772 (1912) (defining conversion as "any wrongful exercise or assumption of authority, personally or by procurement, over another's goods, depriving [the other] of their possession"). But these elements of conversion cannot alone sustain the judgment granting punitive damages. Under Virginia law, an award of compensatory damages "is an indispensable predicate for an award of punitive damages, except in actions for libel and slander." *Gasque v. Mooers Motor Car Co.,* 227 Va. 154, 313 S.E.2d 384, 388 (1984). *See also Peacock Buick, Inc. v. Durkin,* 221 Va. 1133, 277 S.E.2d 225, 227 & n.3 (1981) (approving jury instruction in conversion suit that permitted verdict for punitive damages only upon finding of actual damages). This principle required A & E to buttress its conversion case with proof that the dispossession involved a palpable loss.

■ Again, the necessary evidence is absent here. A & E has claimed actual damages exclusively through Nationwide's failure to pay on the insurance contract. Its damages stemmed from this breach of contract, not from the alleged tort of conversion. The allegations of conversion, furthermore, describe tortious conduct that was extraneous to the breach of contract. Nationwide did not refuse to return the A & E records until April 29, 1981, more than six weeks after Nationwide had formally rejected the insurance claim. The wrongful retention of property was not factually bound to the breach but to the efforts of Nationwide to prove its position in the ensuing litigation. A & E did not request the return of documents until it had initiated suit. It would undermine the rule of *Kamlar Corp. v. Haley* if subsequent disputes

over evidence were to translate into the tort of conversion sufficient to support a punitive damages award in an action for contractual breach. A & E, which recovered its documents under a pre-trial order, has not alleged or proved any other actual damages from the conversion. The award of punitive damages accordingly may not rest on the conversion count.

## IV.

A & E also claimed at trial that the requisite support in tort for an award of punitive damages could be found in its right to recover from Nationwide under the Virginia Unfair Insurance Practices Act, Va. Code § 38.1–49 *et seq.* Bound by the decision in *Morgan v. American Family Life Assurance Co. of Columbus,* 559 F.Supp. 477 (W.D. Va. 1983), the district court held that the statute implied a private cause of action in tort for insureds against insurers who had violated the Act. The jury returned a verdict of liability, but the district court then ruled that an insured could recover only for repeated violations of the Act. Because the court had suppressed evidence of such consistent conduct, it overturned the verdict and conditionally granted a new trial on the claim of unfair practices. *A & E Supply Co. v. Nationwide Mutual Fire Insurance Co.,* 612 F.Supp. 760, 774–775 (W.D.Va.1985). On appeal, we first examine the premise in *Morgan v. American Family Life Assurance Co.* Not obliged to follow that precedent, we conclude that the Virginia Unfair Insurance Practices Act does not establish a private cause of action. We therefore vacate the conditional order for a new trial and remand with instructions to enter judgment for Nationwide on the statutory count.

The Virginia legislature enacted its Unfair Insurance Practices Act to define all practices that constitute "unfair or decep-

---

**4.** Although the jury returned separate verdicts on conversion and on the acquisition of property by false pretenses, both parties have recognized that the tort of conversion, extending to any wrongful act of procurement, subsumes the allegations of false pretenses. We accordingly treat the two counts together and find that, for the same reason, neither theory may support an award of punitive damages.

tive acts or practices" and to prohibit "the trade practices so defined or determined." Va. Code § 38.1–49. The legislature based the Act on a model statute drafted by the National Association of Insurance Commissioners, an example that has been followed by many other states. *See* Comment, *Insurers and Third-Party Claimants: The Limits of Duty*, 48 U.Chi.L.Rev. 125, 146 n.75 (1981). The Act forbids various insurance practices, including failure in bad faith to settle claims for which liability is reasonably clear. *See* Va. Code § 38.1–52.-9(6). To enforce these regulations, the statute delegates to the State Corporation Commission the authority to promulgate rules, to investigate insurers, to conduct hearings, and to impose sanctions. Va. Code §§ 38.1–53 to 38.1–56. The Commission, acting largely through the Insurance Commissioner, may order insurers to cease and desist from prohibited practices, may levy penalty fines, and may suspend or revoke insurance licenses. Va. Code §§ 38.1–55 to 38.1–56. The statute guarantees Supreme Court review of final Commission orders, Va. Code § 38.1–56.1, but does not expressly create or preclude a private right of action against insurers who have committed proscribed trade practices.[5]

The federal district court in *Morgan v. American Family Life Assurance Co.*, 559 F.Supp. at 483–85, addressed this silence through *Cort v. Ash*, 422 U.S. 66, 95 S.Ct. 2080, 45 L.Ed.2d 26 (1975). The Virginia Supreme Court has not, however, adopted the *Cort* rationale for finding an implied private right of action under federal law to the interpretation of state legislation. As a further matter, federal courts should be reluctant to read private rights of action into state laws where state courts and state legislatures have not done so. With-

out clear and specific evidence of legislative intent, the creation of a private right of action by a federal court abrogates both the prerogatives of the political branches and the obvious authority of states to sculpt the content of state law.

■ It is clear that the Virginia Supreme Court would not read the Unfair Insurance Practices Act to create a private right of action in tort. The Court has long regarded the state legislature as a repository of sovereign powers, whose dispensation must in any context be strictly construed. Describing "the doctrine of implied powers" in *Commonwealth v. County Board of Arlington County*, 217 Va. 558, 232 S.E.2d 30, 42 (1977), the Court said that "the rule is clear that where a power is conferred and the mode of its execution is specified, no other method may be selected; any other means would be contrary to legislative intent and, therefore, unreasonable." The Unfair Insurance Practices Act confers a power to redress insurer misconduct by organizing a system of administrative oversight with appellate judicial review. Under the approach of *Commonwealth v. County Board of Arlington County*, a court may not add a regime of private lawsuits to this specified mode of executing the statutory purpose. To do so would be to violate the injunction that "the doctrine of implied powers should never be applied to create a power that does not exist or to expand an existing power beyond rational limits." *Id.* 232 S.E.2d at 42.

The disinclination of the Virginia Supreme Court to recognize an entitlement that has not clearly been legislated is also supported here by a due regard for other provisions that have clearly been legislated. *Cf. National Maritime Union of America v. City of Norfolk*, 202 Va. 672, 119 S.E.2d

---

5. The Act provides at Va. Code § 38.1–57.1 that "no order of the Commission under this article shall in any way relieve or absolve any person affected by such order from any liability under any other laws of this Commonwealth." This section does not authorize the A & E lawsuit, much as Va. Code § 8.01–221 "does not create any new rights of action but instead preserves any existing right of action that an injured person may have against a wrongdoer who has

previously been the subject of statutory penalties for his misconduct." *Morgan v. American Family Life Assurance Co. of Columbus*, 559 F.Supp. 477, 484 (W.D. Va.1983). *See also Hortenstine v. Virginia-Carolina Ry. Co.*, 102 Va. 914, 47 S.E. 996 (1904). As the court in *Morgan v. American Family Life* observed, 559 F.Supp. at 485, neither provision answers the question of whether an implied right of action exists under the Unfair Insurance Practices Act.

307, 314 (1961) ("It is an elementary rule of statutory construction that all relative provisions of a legislative enactment must be considered and read together in construing one provision or section."). The Unfair Insurance Practices Act is but one part of the state insurance code, a statutory complex that fills more than four hundred pages of the Virginia Code. The enactment provides for extensive regulation of insurance rates, availability, and practices. Tensions among these goals are to be resolved by the State Corporation Commission, which Va. Code § 38.1–29 charges "with the execution of all laws relative to insurance and insurance companies." *Blue Cross of Virginia v. Commonwealth ex rel. State Corporation Commission,* 218 Va. 589, 239 S.E.2d 94, 96 (1977).

The measured concord within this program would likely be disrupted by the introduction of state and federal courts as decision-makers affecting only one dimension of interrelated insurance problems. The most casual glance at the action below shows the inconsistencies that would result. The punitive damages awarded by the jury greatly exceeded the penalties provided in the Act. Va. Code §§ 38.1–55 to 38.1–56 (penalty not to exceed $5,000 per violation and $50,000 aggregate for six-month period). The requirement that frequent commissions of unfair claim settlement practices under Va. Code § 38.1–52.9 exist for a statutory violation appears more consistent with continued regulatory oversight than an individual cause of action. The discordant effects of independent—and often inexpert—supervision of unfair trade practices by the jury encourages acceptance of the explicit statutory remedy as the exclusive statutory remedy. As one commentator has advised, "if the legislature has carefully chosen an enforcement mechanism to accomplish the legislative purpose by accommodating conflicting interests, the integrity of the overall statutory scheme requires restraint in implying private actions." Note, *Implied Causes of Action in the State Courts,* 30 Stanford L.Rev. 1243, 1253 (1978).

Our reading of Virginia law accords with the position of several state courts that the model unfair practices legislation proposed by the National Association of Insurance Commissioners, as enacted in those states, does not create a private right of action. *See, e.g., Patterson v. Globe American Casualty Co.,* 101 N.M. 541, 685 P.2d 396 (Ct.App. 1984); *Seeman v. Liberty Mutual Insurance Co.,* 322 N.W.2d 35 (Iowa 1982); *Wilder v. Aetna Life & Casualty Co.,* 140 Vt. 16, 433 A.2d 309 (1981); *Scroggins v. Allstate Insurance Co.,* 74 Ill.App.3d 1027, 30 Ill.Dec. 682, 393 N.E.2d 718 (1979); *Cohen v. New York Property Insurance Underwriting Association,* 65 A.D.2d 71, 410 N.Y.S.2d 597 (1978); *Russell v. Hartford Casualty Insurance Co.,* 548 S.W.2d 737 (Tex. Civ.App.1977); *Retail Clerks Welfare Fund Local No. 1049, AFL—CIO v. Continental Casualty Co.,* 71 N.J. Super. 221, 176 A.2d 524 (1961).[6] In deferring to administrative primacy as a limitation on the adjudicative role, we also parallel interpretation of the Federal Trade Commission Act, 15 U.S.C. § 41 *et seq.,* whose basic prohibition of "unfair or deceptive acts" is tracked by the Virginia statute. Because the substantive prohibitions of that statute were "inextricably intertwined with provisions defining the powers and duties of a specialized administrative body charged with its enforcement," courts have declined to imply any private right of action and have relied upon the regulatory scheme to police the industry. *See Holloway v. Bristol-Myers Corporation,* 485 F.2d 986, 989 (D.C. Cir.1973). We believe that the Vir-

---

**6.** To be sure, some other states have found an implied cause of action in their versions of the model act. *Klaudt v. Flink,* 202 Mont. 247, 658 P.2d 1065 (1983); *Jenkins v. J. C. Penney Casualty Insurance Co.,* 280 S.E.2d 252 (W. Va. 1981); *Royal Globe Insurance Co. v. Suoerior Court of Butte County,* 23 Cal.3d 880, 153 Cal. Rptr. 842, 592 P.2d 329 (1979). We believe that the Virgin-ia Supreme Court would either distinguish these decisions as dependent on variations from the Virginia Code, *see e.g. Royal Globe Insurance Co. v. Superior Court,* 592 P.2d at 333 (noting textual difference between California and Virginia statutes), or would find the other decisions to be unpersuasive.

ginia Supreme Court, while following its unique line of precedent and reasoning, would share many of the concerns discussed by these courts and would reach the same result. We therefore hold that the award of punitive damages to the A & E Supply Co. may not rest on a jury finding that Nationwide violated the Unfair Insurance Practices Act.[7]

### V.

■ As a final "independent, wilful tort" on which to predicate punitive damages in accordance with *Kamlar Corp. v. Haley,* 224 Va. 699, 299 S.E.2d 514, 517 (1983), A & E points to the verdict against Nationwide on its refusal in bad faith to honor a first-party insurance obligation.[8] In denying Nationwide's motion for judgment notwithstanding the verdict, the district court ruled that Virginia would recognize such a tort and that A & E had proved the elements. No Virginia authority directly addressed these issues; the court predicted the course of state law by reference to the Virginia Unfair Insurance Practices Act, the duty of good faith in the performance of insurance contracts, and the established right of action for refusal in bad faith to honor a third-party insurance obligation. *A & E Supply Co. v. Nationwide Mutual Fire Insurance Co.,* 612 F.Supp. 760, 770–772 (W.D.Va.1985). But as we have already explained, the Unfair Insurance Practices Act does not imply the availability of any remedies beyond those described in the statute. Similarly, the extrapolation from the duty of good faith and the analogy to the third-party precedent do not support the district court's conclusion. To the contrary, these considerations indicate that Virginia would join the jurisdictions that have declined to recognize a remedy in tort for refusal in bad faith to honor a first-par-

ty insurance claim. We therefore reject this last basis for the award of punitive damages.

All contracting parties owe to each other a duty of good faith in the performance of the agreement. *Restatement (Second) of Contracts* § 205 (1981). For Nationwide, this duty parallels the insurer's responsibility under Va. Code § 38.1–52.9(6) to attempt "in good faith to effectuate prompt, fair and equitable settlements of claims in which liability has become reasonably clear." The doctrinal roots of the obligation are notoriously elusive: one scholar has argued that actions for bad faith sound in "conequitort," suggesting the interaction among concepts of contract, equity, and tort. Holmes, *Inductions from a Study of Commercial Good Faith in First-Party Insurance Contracts,* 65 Cornell L.Rev. 330, 377 (1977). This case, however, requires us to define the duty within the parameters of Virginia law, for A & E may receive punitive damages if Nationwide's conduct was tortious but may not receive punitive damages if Nationwide's conduct was "only a breach of contract inspired by an ulterior motive." *Kamlar Corp. v. Haley,* 299 S.E.2d at 518.

■ We hold that in a first-party Virginia insurance relationship, liability for bad faith conduct is a matter of contract rather than tort law. The obligation arises from the agreement and extends only to situations connected with the agreement. *Cf. Reisen v. Aetna Life and Casualty Co.,* 225 Va. 327, 302 S.E.2d 529, 533 (1983) ("the existence of the [good faith] duty wholly depended upon a condition precedent, that is, coverage under the policy"). The nonconsensual nature of the duty does not necessarily remove it from the province of contract; the Virginia Supreme Court

---

**7.** We note that the revised Unfair Insurance Practices Act, effective July 1, 1986, provides that "No violation of this section shall of itself be deemed to create any cause of action in favor of any person other than the Commission; but nothing in this subsection shall impair the right of any person to seek redress at law or equity for any conduct for which action may be brought." Va. Code § 38.2–510(B).

**8.** An insurer's first-party insurance obligation is its duty to compensate the insured for direct losses within the policy coverage. An insurer's third-party insurance obligation is its duty to defend the insured against claims by another, injured party and to indemnify the insured for losses sustained through such claims.

has long enforced similar bonds in contract despite an absence of an express promise among the parties. *See, e.g., Carpenter v. Virginia-Carolina Chemical Co.,* 98 Va. 117, 35 S.E. 358 (1900). Indeed, insofar as the obligation is imposed by Va. Code § 38.1–52.9, its status as a contractual term is a routine application of Virginia principles. "It is an elementary rule of construction of insurance contracts that such a statutory provision is as much a part of the policy as if incorporated therein." *State Farm Mutual Automobile Insurance Co. v. Duncan,* 203 Va. 440, 125 S.E.2d 154, 157 (1962).[9]

The state law of tort, on the other hand, cannot so easily accommodate an action for bad faith performance in insurance contracts. Because every agreement involves some variation of the duty of good faith, the remedy would quickly expand beyond its original basis. As the Supreme Court of Utah noted in *Beck v. Farmers Insurance Exchange,* 701 P.2d 795, 800 (Utah 1985), courts adopting the A & E reasoning "appear to have had difficulty in developing a sound rationale for limiting the tort approach to insurance contract cases." Tort relief in this situation implies tort relief in similar commercial and employment cases. *See Seamen's Direct Buying Service, Inc. v. Standard Oil Co.,* 36 Cal.3d 752, 206 Cal. Rptr. 354, 686 P.2d 1158, 1166–67 & n. 6 (1984). Virginia law, however, explicitly forecloses that possibility. In *Kamlar Corp. v. Haley,* the Virginia Supreme Court refused "to turn every breach of contract into a tort" and held that an employee did not state a tort claim by charging that his employer "was 'actuated by malicious motives' in breaching the contract of employment." 299 S.E.2d at 517, 518. We believe that the Supreme Court would reach the analogous conclusion that an insured does not state a tort claim by charging that an insurer was actuated by bad faith in breaching the contract

of insurance. *Accord, Wallace v. Hartford Insurance Co.,* 583 F.Supp. 1108 (W.D. Va. 1984). The better authority supports that view. *See, e.g., Beck v. Farmers Insurance Exchange; Spencer v. Aetna Life and Casualty Insurance Co.,* 227 Kan. 914, 611 P.2d 149 (1980); *Lawton v. Great Southwest Fire Insurance Co.,* 118 N.H. 607, 392 A.2d 576 (1978).

Because the suit for bad faith performance is thus in effect an action on the insurance policy, "the provisions of the contract govern the measure of recovery rather than any rules applicable to cases sounding in tort," *Bickel v. Nationwide Mutual Insurance Co.,* 206 Va. 419, 143 S.E.2d 903, 905 (1965). For some types of breach, these provisions might successfully limit the available damages to the stated amount of indemnity. *See* Annot., 47 A.L.R.3d 314 (1973). But if an indemnitor has violated the contractual duty of good faith, the indemnitee may recover full general and consequential damages. *See Board of Supervisors of Stafford County v. Safeco Insurance Co. of America,* 226 Va. 329, 310 S.E.2d 445, 450 (1983) (predicating surety's liability for consequential damages on finding of bad faith default); *see also Beck v. Farmers Insurance Exchange,* 701 P.2d at 801–802; *Lawton v. Great Southwest Fire Insurance Co.,* 392 A.2d at 579–580; *Reichert v. General Insurance Co.,* 59 Cal. Rptr. 724, 428 P.2d 860, 864 (1967), *vacated on other grounds,* 68 Cal. 2d 822, 69 Cal. Rptr. 321, 442 P.2d 377 (1968). Had A & E proved foreseeable losses, not susceptible to mitigation, resulting from Nationwide's bad faith refusal to pay, Virginia contract law would make A & E whole. The same principles of reimbursement will not support exemplary damages, however, for such an award is designed "not so much as compensation for the plaintiff's loss as to warn others, and to punish the wrongdoer." *Wright v. Everett,* 197 Va. 608, 90 S.E.2d 855, 859 (1956).

---

**9.** An acknowledgment that the statute creates contractually enforceable duties does not conflict with a determination that the statute creates no private right of action, for contractual interpretation and statutory construction are separate enterprises. The cause of action recognized here may be in many ways different from a cause of action derived in tort from the statute.

Permitting consequential damages within the scope of contract law lessens the incentive for an insurer to postpone satisfaction in hopes of pressuring the insured to accept a fraction of his due. *Beck v. Farmers Insurance Exchange*, 701 P.2d at 798. The distress that persons experience at times of personal or financial loss leaves them vulnerable to exploitation, a temptation that would be enhanced if the insurer's contractual liability could never, as a matter of law, extend beyond the policy limits for even the most flagrant breach. *Lawton v. Great Southwest Fire Insurance Company*, 392 A.2d at 579 ("The policy limits restrict the amount the insurer may have to pay in the performance of the contract, not the damages that are recoverable for its breach."). Holding that the duties and obligations of the parties are contractual does not, therefore, absolve the insurer of the need to investigate claims, to settle promptly and fairly those that are covered, and to proceed generally in good faith as that term is defined in Va. Code § 38.1–52.9.

The definition of an insurer's responsibility through consequential damages in contract rather than punitive damages in tort is also consistent with the relationship between the first-party claims of A & E and the third-party claims in *Aetna Casualty & Surety Company v. Price*, 206 Va. 749, 146 S.E.2d 220 (1966). In *Aetna Casualty*, the Virginia Supreme Court held that a liability insurer must answer for a judgment in excess of the promised coverage if the insurer has in bad faith refused to settle within the policy limits on a claim against its insured. This approach is grounded in contract. *See* Comment, *Insurers' Liability for Excess Judgments in Virginia: Negligence or Bad Faith?*, 15 U.Rich.L.Rev. 153 (1980). The full judgment was due the insured for foreseeable losses resulting from the insurer's breach of the duty of good faith. Although the proper range of consequential damages may vary in insurance cases, *id.* at 161–62, the guiding principle of reimbursement for provable loss appears to be settled. No Virginia authority indicates that punitive damages are available in the third-party context. *Cf. Swiatlowski v. State Farm Mutual Auto Insurance Co.*, 585 F.Supp. 965 (W.D. Va. 1984) (withholding judgment on issue). Even less should punitive damages be recoverable for bad faith breach in the first-party context where the insured is not "wholly dependent upon the insurer to see that, in dealing with claims by third parties, the insured's best interests are protected." *Beck v. Farmers Insurance Exchange*, 701 P.2d at 799. The award to A & E on this basis must accordingly be reversed.

## VI.

Like the implication of a private right of action under the Unfair Insurance Practices Act, creation of a cause in tort for bad faith refusal to settle an insurance claim carries profound consequences. On the one hand, these two actions may reduce delay and obstruction in recoveries by those insured. On the other, they may deter assertion even of the most legitimate defenses by insurers. These two actions—and the large punitive awards that potentially accompany them—would portend significant changes in standards of insurer conduct and costs of insurance coverage. Whether those effects bode good or ill is not for us to say. Virginia, through its courts and legislature, is the one to restructure its insurance industry, not the federal courts through implication of private rights of action under statute and creation of venturesome torts at common law.

Here the insured sued under the policy and recovered its proceeds. The punitive award is another matter. We cannot conclude that a particular instance of conduct on the part of a particular insurer authorizes us to undertake wholesale changes in Virginia insurance law. Examination of the various foundations for the punitive verdict in the law of tort persuades us that it cannot stand. That judgment is therefore

REVERSED.