**CANCUN ADVENTURE TOURS, INC., Plaintiff–Appellee,**

v.

**UNDERWATER DESIGNER COMPANY, Defendant–Appellant,**

and

**Paul F. Califano, Defendant.**

**CANCUN ADVENTURE TOURS, INC., Plaintiff–Appellant,**

v.

**UNDERWATER DESIGNER COMPANY; Paul F. Califano, Defendants–Appellees.**

Nos. 88–3033(L), 88–3046.

United States Court of Appeals, Fourth Circuit.

Argued Oct. 5, 1988.

Decided Dec. 6, 1988.

Rehearing Denied Jan. 3, 1989.

JoAnne B. Butt, Alexandria, Va., for defendant-appellant.

Gregory L. Murphy (David C. Schroeder, Murphy, McGettigan & West, P.C., Alexandria, Va., on brief), for plaintiff-appellee.

Before MURNAGHAN, WILKINSON and WILKINS, Circuit Judges.

WILKINSON, Circuit Judge:

Cancun Adventure Tours filed suit against Underwater Designer Company (UDC) and Paul Califano alleging breach of contract, breach of warranty, and fraud in the sale of a modified air compressor. A federal magistrate awarded compensatory and punitive damages to Cancun but declined to award Cancun damages for lost profits. We reverse the punitive damages award. In all other respects, the magistrate's judgment is affirmed.

## I.

UDC is a corporation organized under the laws of Florida and engaged in various aspects of the scuba diving business. Part of its trade includes the sale of air compressors used to fill scuba diving tanks. Cancun Adventure Tours is a corporation organized under the laws of Virginia. It operates a dive shop in Cancun, Mexico.

In the spring of 1986, Jamie Lewis, who resides in Virginia and is president of Cancun, saw a UDC advertisement in the nationally distributed magazine, *Scuba Times*. Lewis telephoned Paul Califano, UDC's sole owner and president, about Cancun's need for an air compressor system that could fill seventy-five to one hundred scuba tanks per day. Califano mailed a quotation for an air compressor to Cancun in Virginia. Lewis subsequently decided that the proposed compressor was not adequate for Cancun's purposes. On May 7, 1986, Califano sent a second proposal to Cancun in Virginia outlining terms of sale for a 15–20 CFM (cubic feet per minute), 5,000 PSI (pounds per square inch) mod-

ified fresh air compressor. Cancun agreed to purchase the compressor based on Califano's representations that the particular model was adequate for Cancun's needs.

In June of 1986, the compressor was installed at the dive shop in Cancun, Mexico. Soon thereafter, it began to overheat and was not able to fill scuba tanks as quickly as Califano had represented. Two weeks after installation, the compressor developed a knocking sound. This problem was communicated to UDC and the compressor was returned to UDC for repairs. UDC did not discover the source of the knocking sound, but did discover evidence of overheating. The compressor was returned to the dive shop in Cancun in August, 1986. The overheating problem persisted and Cancun was unable to use the machine to its represented capacity. In January, 1987, Cancun notified UDC that the compressor was continuing to overheat.

Cancun filed suit against UDC and Califano on March 24, 1987. The case was tried by consent without a jury before a federal magistrate. On December 2, 1987, the magistrate entered judgment in favor of Cancun, awarding $16,212.13 in compensatory damages and $5,000.00 in punitive damages. The magistrate declined to award damages to Cancun for lost profits. UDC and Califano appeal the compensatory and punitive damages awards. Cancun cross-appeals on the issue of lost profits.

## II.

UDC and Califano appeal Cancun's compensatory and punitive damages awards on several grounds. Appellants contend, inter alia, that: (A) UDC and Califano were not subject to the personal jurisdiction of a federal court sitting in diversity in Virginia; (B) that Cancun failed to give adequate notice of the alleged contractual breach as required by the Virginia Commercial Code; (C) that the magistrate improperly pierced the corporate veil of UDC; and (D) that Cancun's claim for punitive damages should have been denied. We examine each issue in turn.

## A.

The Virginia long-arm statute provides that a court may exercise jurisdiction over a person, who acts directly or by an agent, as to a cause of action arising from the person's transaction of business in Virginia. Va.Code § 8.01–328.1(A)(1). The Virginia Supreme Court has stated that this statute embodies a "single transaction" test that asserts jurisdiction to the extent permitted by due process. *John G. Kolbe, Inc. v. Chromodern Chair Co.*, 211 Va. 736, 180 S.E.2d 664, 667 (1971). A nonresident defendant must therefore have certain "minimum contacts" with the forum state, *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 471–78, 105 S.Ct. 2174, 2181–85, 85 L.Ed.2d 528 (1985); *World–Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 291–94, 100 S.Ct. 559, 564–66, 62 L.Ed.2d 490 (1980), such that maintenance of the suit does not offend "traditional notions of fair play and substantial justice." *International Shoe Co. v. Washington*, 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945). For jurisdiction to be proper, " 'it is essential ... that there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws.' " *Danville Plywood Corp. v. Plain & Fancy Kitchens, Inc.*, 218 Va. 533, 238 S.E.2d 800, 802 (1977), *quoting Hanson v. Denckla*, 357 U.S. 235, 253, 78 S.Ct. 1228, 1239–40, 2 L.Ed.2d 1283 (1958).

The requisite minimum contacts are present in this case. UDC solicited business in Virginia in the nationally distributed magazine, *Scuba Times*. Although such an advertisement, standing alone, would not confer jurisdiction, appellants subsequently negotiated and undertook a contractual obligation with a Virginia resident. UDC mailed purchase orders to Cancun Adventure Tours in Virginia and accepted payment from Virginia. After sale of the air compressor, UDC and Califano continued to deal with Cancun Adventure Tours in Virginia by telephone and through the mails. These contacts were such that litigation in Virginia was reasonably fore-

seeable. Appellant's relations with the forum state were not unique or insignificant and Cancun is not attempting to manufacture jurisdiction based upon its unilateral activity. *Cf. Chung v. NANA Dev. Corp.*, 783 F.2d 1124, 1126–27 (4th Cir.1986). We agree with the magistrate that UDC and Califano purposefully availed themselves of the privileges of transacting business in Virginia and therefore were subject to the personal jurisdiction of the district court.

## B.

■■■ Appellants also contend that Cancun failed to give adequate notice of the alleged contractual breach as required by the Virginia Commercial Code. We disagree. Whether a buyer has given a seller proper notice under the Virginia commercial Code is a question of fact. *See Gober v. Revlon, Inc.*, 317 F.2d 47, 52 (4th Cir. 1963). Findings of fact will not be set aside unless "clearly erroneous." Fed.R. Civ.P. 52(a). There is sufficient evidence in the record to support the magistrate's finding that appellants were on notice that the transaction was troublesome.

According to the Virginia Commercial Code, where tender has been accepted, "the buyer must within a reasonable time after he discovers or should have discovered any breach notify the seller of breach or be barred from any remedy." Va.Code § 8.2–607(3)(a). The provision does not require, however, that notification include a clear statement of all objections that will be relied on by the buyer. *Id.* at Comment 4. A buyer simply is required to notify the seller that the transaction is "troublesome" and should be watched. *Id.* In addition, retail consumers—i.e., those who buy the item for their own use rather than for resale in the course of business—are held to a lesser standard of notice than are merchant buyers. *Id.*

It is apparent that UDC and Califano were on notice that this transaction was troublesome. First, Cancun communicated its dissatisfaction with the compressor to UDC and shipped it back to UDC pursuant to Califano's instructions. After it was returned to UDC, Califano discovered evidence that the compressor was overheating. Second, in January, 1987, Cancun informed Califano that the compressor was continuing to overheat. Cancun filed suit two months later. Finally, Cancun's status was that of a "retail consumer" for purposes of Va.Code § 8.2–607—it was not in the business of selling air compressors and purchased the equipment for its own use. These factors constitute sufficient notice to satisfy the requirements of the Virginia Commercial Code.

## C.

■■■ We also disagree with Califano's assertion that the magistrate erred by imposing liability on him in his individual capacity.

It is true, as Califano asserts, that the imposition of such liability should be a rare occurrence. A corporation exists as a legal entity separate and distinct from its corporate shareholders. Under the doctrine of limited liability, each shareholder's responsibility for the acts of a corporation is limited to the shareholder's investment in that corporation. *DeWitt Truck Brokers, Inc. v. Fleming Fruit Co.*, 540 F.2d 681, 683 (4th Cir.1976). This concept is a basic attribute of the corporate form; it encourages business investment and fosters stability in commercial transactions. *Johnson v. Flowers Industries, Inc.*, 814 F.2d 978, 980 (4th Cir.1987); *Cheatle v. Rudd's Swimming Pool Supply Co.*, 234 Va. 207, 360 S.E.2d 828, 831 (1987). A court's power to pierce the corporate veil and impose liability on a shareholder in his individual capacity is therefore to be exercised with extreme circumspection. *In re County Green Ltd. Partnership*, 604 F.2d 289, 292 (4th Cir.1979).

While accorded great judicial deference, the corporate veil is not sacrosanct. There are circumstances in which courts will treat the corporation and its shareholders as identical. Substantial ownership of a corporation by a single individual is not alone sufficient to pierce the corporate veil. But when substantial ownership is combined with other factors, such as commingling of corporate and personal assets and diversion

1048

of corporate funds to the dominant shareholder, a court may peer behind the corporate veil and impose liability on the individual shareholder. *DeWitt,* 540 F.2d at 685; *Cunningham v. Rendezvous, Inc.,* 699 F.2d 676, 680 (4th Cir.1983).

Cancun has satisfied its burden of showing that the corporate fiction should be disregarded in this case. First, Cancun produced substantial evidence that Califano regularly commingled corporate and personal assets. A review of the record, for example, shows that the building in which UDC conducts business is owned jointly by Califano and his wife. Although ownership of the building has not been transferred to the corporation, UDC pays the entire mortgage on the property. Corporate and personal tax returns also indicate that UDC pays rent to Califano and his wife for use of the property, which also serves as the Califanos' residence. Califano testified that in some years the property is carried on UDC's books as a corporate asset and in other years it is not. A similar arrangement exists with respect to an automobile owned by Califano. The corporation does not own the automobile, but it has been carried on UDC's books as a fixed asset. The automobile also has been carried on UDC's books as a current liability and UDC regularly makes the car payments.

Second, a review of the record also indicates that Califano regularly diverted corporate funds and assets for his personal use. Appellants admitted in response to a Cancun interrogatory that UDC paid "all expenses" of Califano and his wife. Califano did not maintain a personal bank account. Instead, UDC checks were drawn to pay the Califanos' food bills, medical bills, laundry and dry cleaning expenses, personal accounts with retail stores and charge card companies, and personal vacation expenses. Finally, there is evidence in the record that UDC corporate funds were used to pay for such non-corporate expenses as a pedicure, manicure, and massage.

We recognize that small businesses often act informally. Califano, however, the sole owner of UDC, treated his corporate and personal affairs as if they were indistinguishable. He thus cannot complain when Cancun, who was injured by his misrepresentations, seeks to do the same.

D.

■ Finally, appellants contend that Cancun's claim for punitive damages should have been denied. We agree and reverse the punitive award.

There is a strong presumption in Virginia against awarding punitive damages for breach of contract. *LaVay Corp. v. Dominion Fed. Sav. & Loan Ass'n,* 830 F.2d 522, 526 (4th Cir.1987). *A & E Supply Co. v. Nationwide Mut. Fire Ins. Co.,* 798 F.2d 669, 671–72 (4th Cir.1986). Damages for breach of contract generally "are limited to the pecuniary loss sustained." *Kamlar Corp. v. Haley,* 224 Va. 699, 299 S.E.2d 514, 517 (1983), *quoting Wright v. Everett,* 197 Va. 608, 90 S.E.2d 855, 860 (1956). They are designed to compensate the non-breaching party and are limited to those losses reasonably within the contemplation and control of the parties when they formed their contractual relationship. *Kamlar,* 299 S.E.2d at 517.

The presumption against punitive damages is particularly strong in the case of contracts governed by the Virginia Commercial Code. The Code states that punitive damages may not be had "except as specifically provided in this act or by other rule of law." Va.Code § 8.1–106. There is no specific authorization in the Code for punitive damages in transactions involving the sale of goods. Punitive damages are therefore recoverable only if authorized by some "other rule of law."

The law's presumption against punitive damages in Virginia admits but one exception. Punitive damages can be awarded only in those instances where the contractual breach establishes the elements of an "independent, wilful tort." *LaVay,* 830 F.2d at 526–27; *Kamlar,* 299 S.E.2d at 517. In addition, an award of compensatory damages is an "indispensable predicate" for an award of punitive damages in Virginia, except in actions for libel and slander. *A & E Supply,* 798 F.2d at 673; *Gasque v.*

*Mooers Motor Car Co.,* 227 Va. 154, 313 S.E.2d 384, 388 (Va.1984). Unless compensatory damages are pleaded, proved, and awarded in tort, a punitive damages award cannot follow.

Here this indispensable predicate is lacking. Cancun asserts that UDC and Califano fraudulently misrepresented the capabilities of the air compressor sold to Cancun. Virginia law defines fraud as the knowing or reckless misrepresentation of a material fact to another person, whose reasonable reliance on the misrepresentation results in damage. *Winn v. Aleda Constr. Co.,* 227 Va. 304, 315 S.E.2d 193, 195 (1984).

Cancun's damages, however, stemmed from appellants' contractual breach of warranty, not from the alleged tort of fraud. A punitive damages award must be based upon a finding of actual damages in tort. *A & E Supply,* 798 F.2d at 673. The magistrate's award of compensatory damages was contractual; the award was fully consistent with the remedial provisions of the Virginia Commercial Code which permits a buyer to recover for "the loss resulting in the ordinary course of events from the seller's breach as determined in any manner which is reasonable." Va.Code § 8.2–714(1). *See also* Va.Code §§ 8.2–714(3) & 8.2–715(1) (reasonable expenses also are recoverable). For example, damages were awarded for the original purchase price of the equipment, repair expenses, freight costs, and costs incidental to installation and operation of the defective air compressor. The record thus indicates that the magistrate did not award compensatory damages pursuant to Cancun's tort cause of action, and proof of contractual breach, standing alone, cannot support the punitive award. If every breach of warranty under the Virginia Commercial Code were converted into a cause of action in tort for fraudulent misrepresentation, the well-defined remedies in the Code for damages sustained in the sale of goods would soon be vitiated.

### III.

On cross-appeal, Cancun contends that the magistrate erred in denying its claim for lost profits damages. We reject that contention.

Lost profits are a form of "consequential" damages and as such may be recoverable in Virginia where a seller breaches a contract or warranty in the sale of goods. Va.Code §§ 8.2–714(3) & 8.2–715(2). A court that awards lost profits damages runs the risk, however, of recompensing business success that was never achieved. The Virginia Commercial Code therefore imposes restrictions on a buyer's right to recover such consequential damages. To be recoverable, consequential damages must have been foreseen or reasonably foreseeable and the buyer must prove them with reasonable certainty. Va.Code § 8.2–715(2)(a) & Comment 4. *See also Duggin v. Williams,* 233 Va. 25, 353 S.E.2d 721 (1987). In addition, consequential damages are permitted only for those losses "which could not reasonably be prevented by cover or otherwise." Va.Code § 8.2–715(2)(a).

Cancun asserts that UDC's breach of warranty in the sale of the air compressor deprived Cancun of profits that it could have earned with that equipment. Cancun sought damages for lost profits for the period of January to July of 1987. The magistrate rejected the lost profits claim because there was little evidence before the court as to why Cancun did not attempt to mitigate its losses, e.g., by buying or leasing another air compressor. Cancun's failure to minimize its losses in the market makes it unnecessary to inquire whether its lost profits were within the contemplation of the parties and could be proven at trial.

### IV.

For the foregoing reasons, the magistrate's award of punitive damages is reversed. The judgment is affirmed in all other respects.

AFFIRMED IN PART; REVERSED IN PART.