**UNPUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

ROSS JUDSON,
Plaintiff-Appellee,

v.

No. 97-1816

DEVELOPMENT TECHNOLOGIES,
INCORPORATED,
Defendant-Appellant.

Appeal from the United States District Court
for the Eastern District of Virginia, at Alexandria.
Raymond A. Jackson, District Judge.
(CA-96-267-A)

Argued: January 29, 1998

Decided: July 9, 1998

Before ERVIN and LUTTIG, Circuit Judges, and
BUTZNER, Senior Circuit Judge.

_____

Affirmed in part and reversed in part by unpublished opinion. Judge
Ervin wrote the opinion, in which Judge Luttig and Senior Judge
Butzner joined.

_____

**COUNSEL**

**ARGUED:** Mark Scott London, LONDON & MEAD, Washington,
D.C., for Appellant. Richard Alan Cooter, Alexandria, Virginia, for
Appellee. **ON BRIEF:** Herbert S. Rosenblum, ROSENBLUM &
ASSOCIATES, P.C., Alexandria, Virginia, for Appellant.

_____

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

_____

**OPINION**

ERVIN, Circuit Judge:

A jury found defendant-appellant Development Technologies liable to plaintiff-appellee Ross Judson for breach of contract and fraud, and awarded Judson $93,500 in compensatory damages and $25,000 in punitive damages. Development Technologies appeals, alleging the district court erred in denying its motion for a directed verdict on the fraud count, in denying its motion for a new trial, and in awarding punitive damages. We reverse the punitive damages award and affirm the judgment in all other respects.

I.

In May 1993, the president of Development Technologies, Noel Bergman, contacted Ross Judson and expressed an interest in incorporating "9 Lives," a computer program developed by Judson and marketed by him as shareware, into a product Development Technologies was developing called "Deskman/2." The parties reached an agreement to that effect in October 1993, which specified that Judson was to receive royalty payments of ten percent of the net revenue from sales of the Deskman/2 product. In the agreement net revenue was defined as "gross revenue, minus actual operating costs. It does not include payments to other principles [sic]." Joint Appendix at 165.

In January 1995, Development Technologies began paying its principals, including Judson, a fixed monthly fee. Judson received five checks of $500 each in 1995. Although Development Technologies contended that Judson understood and agreed that these payments were to be in lieu of the ten-percent royalty payments previously agreed to, Judson testified at trial that he did not agree to any such arrangement and believed these payments were advances on royalties. Joint Appendix at 55. At the end of 1995, Judson sent Bergman a series of e-mails requesting sales figures for 1995 so that he could

2

"evaluate what has to happen, per our agreement." Supp. Joint Appendix at 6. Bergman responded that he would "let[Judson] know as soon as we have numbers." Id. at 4.

When he failed to receive either a royalty payment or any financial figures by March 1996, Judson filed a complaint against Development Technologies alleging, inter alia, breach of contract and fraud. At trial, both Development Technologies' tax returns and internal financial records were introduced. Counsel for Judson cross-examined Bernard Bergman, Noel Bergman's father and Development Technologies' "financial person," about the company's financial records and asked him to explain a number of apparent discrepancies between the two sets of numbers. Bernard Bergman admitted he was unable to explain the discrepancies, and was also unable to explain to whom certain commission payments reported in the tax returns had been paid and how these commission payments would have affected the company's net profits. Development Technologies failed to present any other evidence that might have explained the discrepancies or how the various figures in evidence fit together.

A special jury sheet was submitted to the jury. In answering the first question posed by the special jury sheet, the jury found that Development Technologies had breached the contract between the parties and fixed damages at $93,500. The second question posed by the sheet was whether Development Technologies had committed fraud. The jury answered this question in the affirmative. The sheet then required the jury, if it found fraud, to fix damages, which were further subdivided into compensatory and punitive damages. The jury left the first line, indicating the amount of compensatory damages for fraud, blank. On the next line, which indicated the amount of punitive damages for fraud, the jury filled in "$25,000."

After the trial, Development Technologies filed a motion under Rule 50(b) for judgment as a matter of law on the fraud count, and a Rule 59 motion asking for a new trial. The district court denied the motions and Development Technologies appealed.

II.

Development Technologies first argues that the district court erred in refusing to grant its motion for judgment as a matter of law on the

3

fraud count. This Court reviews <u>de novo</u> the grant or denial of a motion for judgment as a matter of law to determine whether the evidence presented at trial, viewed in the light most favorable to the non-movant, would have allowed a jury to render a verdict in the non-movant's favor. <u>Gairola v. Virginia Dep't of Gen. Servs.</u>, 753 F.2d 1281, 1285 (4th Cir. 1985).

In order to establish fraud under Virginia law, the plaintiff bears the burden of proving by clear and convincing evidence: 1) a false representation, 2) of a material fact, 3) made intentionally and knowingly, 4) with intent to mislead, 5) reliance by the aggrieved party, and 6) resulting damages. <u>Bryant v. Peckinpaugh</u>, 400 S.E.2d 201, 203 (Va. 1991). Development Technologies contends that Judson failed to prove that it intentionally made false representations about its intent to pay him the agreed-upon ten percent of the net profits. Rather, according to Development Technologies, the evidence presented by Judson proves only a simple misunderstanding between the parties over how payments were to be made (flat fee vs. royalties).

Development Technologies' argument is without merit because Judson presented sufficient evidence from which a jury could have reasonably concluded that the company intended to mislead and defraud Judson. The e-mail correspondence between Judson and Bergman clearly shows that Judson still expected to receive royalty payments based on the October 8, 1993 agreement, even after Development Technologies had made a number of $500 flat-fee payments. Bergman's responses did nothing to contradict Judson's expectation -- on the contrary, they seemed to confirm it. This evidence, viewed in the light most favorable to Judson, would have allowed the jury to render a verdict for Judson on the fraud issue. The district court was therefore correct in refusing to grant a directed verdict on the fraud count.

III.

Development Technologies next protests that there was insufficient evidence to support the jury's compensatory damages award on the breach of contract claim, and that it is therefore entitled to a new trial because the award was necessarily based on speculation and surmise. We disagree. While it is true that the plaintiff bears the burden of

4

proving his damages with reasonable certainty, see Murray v. Hadid, 385 S.E.2d 898, 904 (Va. 1989) ("A plaintiff is not required to prove the exact amount of his damages; however, he is required to show sufficient facts and circumstances to permit a jury to make a reasonable estimate of those damages."), we will not disturb a district court's decision to grant or deny a new trial absent a clear abuse of discretion, Bristol Steel & Iron Works v. Bethlehem Steel Corp., 41 F.3d 182, 186 (4th Cir. 1994).

Development Technologies states that there is no evidence that its 1994 or 1995 tax returns were incorrect, and further points to CPA compilations and other internal financial records as support for its contention that Judson's actual damages could not have been as high as the $93,500 the jury awarded. Development Technologies further alleges that at least a portion of the company's income reported on its tax returns came from projects other than Deskman/2, and that Judson improperly included this portion of the company's income as part of his evidence of damages.

While it is not exactly clear how the jury calculated its award, viewed in the light most favorable to Judson, there was sufficient evidence to support the jury's award of $93,500 in compensatory damages. Based on the clear inconsistencies between the amounts reported in the tax returns and in the company's internal records, and the inability of Development Technologies' personnel to give a coherent explanation of its finances, the jury could have reasonably concluded that the financial statements and tax returns prepared by or at the behest of Development Technologies were not trustworthy and were basically designed to conceal the true amount of net profit. Furthermore, the jury could have rejected Development Technologies' unsupported assertion that a significant (but unspecified) portion of its reported net income came from projects other than Deskman/2. Based on the evidence Judson presented, therefore, a jury reasonably could have found $93,500 in compensatory damages, and the district court did not abuse its discretion in refusing to grant a new trial.

IV.

Finally, Development Technologies contends that the award of punitive damages was improper when the jury failed to award com-

5

pensatory damages on the fraud claim. We agree and reverse the punitive damages award.

The general rule in Virginia is that punitive damages are not allowed for breach of contract. A & E Supply Co. v. Nationwide Mut. Fire Ins. Co., 798 F.2d 669, 671-72 (4th Cir. 1986); Gasque v. Mooers Motor Car Co., 313 S.E.2d 384, 388 (Va. 1984). The only exception to this rule is where a plaintiff seeking punitive damages can allege a "wilful, independent tort in a count separate from that which alleges a breach of contract." Kamlar Corp. v. Haley, 299 S.E.2d 514, 518 (Va. 1983). Virginia law is also clear that an award of compensatory damages is an "indispensable predicate" for an award of punitive damages, except in actions for libel or slander. Gasque, 313 S.E.2d at 388. This Circuit has interpreted these various requirements to mean that "[u]nless compensatory damages are pleaded, proved, and awarded in tort, a punitive damages award cannot follow." Cancun Adventure Tours, Inc. v. Underwater Designer Co., 862 F.2d 1044, 1049 (4th Cir. 1988).

According to the special verdict sheet filled out by the jury, the only compensatory damages awarded were for the breach of contract claim. Although the jury answered the second question, "Did the defendant commit Fraud?" by circling "yes," it left the line for compensatory damages on the fraud claim blank. The fact that the jury left the line blank instead of writing in "$0" suggests that the jury may have assumed that, given the structure of the verdict sheet, its $93,500 award for the breach of contract damages would compensate Judson for the fraud claim as well. That assumption was incorrect, if indeed the jury made it at all. In order to sustain punitive damages, some amount of compensatory damages must be specifically awarded for the independent tort alleged -- compensatory damages on the breach of contract count will not support the award of punitive damages. See id. Because the record indicates that the jury failed to award any compensatory damages on Judson's independent tort of fraud, the $25,000 punitive damages award cannot stand.

V.

For the foregoing reasons, we reverse the jury's award of punitive damages. The judgment is affirmed in all other respects.

AFFIRMED IN PART; REVERSED IN PART

6