## CIRCUIT COURT OF THE CITY OF HAMPTON

James L. Aldrich et al.

v.

Old Point National Bank

May 13, 1993

Case No. (Law) 28506

BY JUDGE J. MICHAEL GAMBLE

I am writing this opinion letter to rule on the Demurrer and Motion to Dismiss which has been filed by the Defendant. Prior to ruling on this Demurrer and Motion, I have reviewed the briefs and considered the oral arguments which have been presented.

This case arises out of a banking relationship between Old Point National Bank of Phoebus ("OPNB" or "Bank") and a Virginia General Partnership known as Alson, Ltd., in which James Aldrich and Jeffrey Aldrich were general partners. Alson owned land and buildings at 32 E. Queen's Way, Hampton, Virginia.

Transparencies, Inc. ("TI") was a corporation formed by James and Jeffrey Aldrich, who were sole shareholders. TI functioned as a photography lab business on the premises at 32 E. Queen's Way owned by Alson.

The real estate owned by Alson was subject to two deeds of trust with the secured indebtedness payable to OPNB. It was alleged in the Motion for Judgment that OPNB claimed a security interest in furniture, fixtures, equipment, and inventory of Alson by virtue of a security agreement and financing statement given by Alson to secure a note dated November 1, 1984, which was also secured by one of the deeds of trust.

Alson began having difficulties meeting its debt service to OPNB in 1990. OPNB took certain actions in an effort to protect itself with reference to the troubled loan with Alson. Ultimately, OPNB attempted to possess certain personal property upon which it had an alleged lien and instituted foreclosure proceedings against the real estate.

The Plaintiffs allege that OPNB attempted to wrongfully possess personal property owned by TI upon which OPNB did not have any lien.

Eventually, TI filed for bankruptcy relief under Chapter 11 of the United States Bankruptcy Code. While in Chapter 11, TI assigned for $10.00 consideration its right of action against OPNB to the Aldriches. Although this assignment was made during the period of time that TI was in bankruptcy, no effort was made to secure the approval of the Bankruptcy Court for such transfer.

TI was voluntarily dismissed from the Chapter 11 proceeding in 1992.

The Aldriches, individually, as partners of Alson, and as assignees of TI, have filed an eleven count Motion for Judgment against OPNB seeking monetary relief. OPNB has filed a general Demurrer and a Demurrer to each count of the Motion for Judgment.

This Court, of course, for purposes of the Demurrer, assumes that all of the allegations and the reasonable inferences from such allegations, in the Motion for Judgment, are true.

The Court will address the issues raised by the Demurrer in the same order as set forth in the Demurrer.

(1) *Standing of Plaintiffs as Individuals*

The Court partially grants the Demurrer on this ground. The relationship between OPNB and Alson, Ltd., was that of debtor and creditor. Alson owned the real estate and also gave a lien on certain personal property. Accordingly, any right of action vested in James Aldrich and Jeffrey Aldrich as partners rather than as individuals under Counts Three, Four, Seven, Eight, Nine, Ten, and Eleven.

Likewise, as the Court has ruled below, the Aldriches do not own the claim of TI against OPNB. By virtue of the dismissal of the Chapter 11 proceeding, the right to this claim was revested in TI. There has been no allegation of any additional assignment of TI's claim against OPNB to the Aldriches since the date of the dismissal of the Chapter 11 bankruptcy proceeding. Only TI or Alson would have any right of action under Counts Three, Four, Seven, Eight, Nine, Ten, and Eleven.

In order for an individual to have a right of action, he must have some interest in the property at issue. *Keepe v. Shell Oil*, 220 Va. 587, 591, 260 S.E.2d 722 (1979); *Cemetery Cons. v. Tidewater Funeral Directors*, 219 Va. 1001, 1003, 254 S.E.2d 61 (1979).

Because the Aldriches have no interest in the property sought to be seized (under the allegations of the Plaintiffs), they have no claim for violation of § 8.9-503 under Count Three. Additionally, because they have no interest in the property (the Motion for Judgment alleges TI owns the property), they have no claim for wrongful seizure under Count Four. Likewise, because they have no interest in the personal property or the real estate as individuals (as alleged in the Motion for Judgment), they have no individual claim under Counts Seven, Eight, Nine, and Ten. The litigation complained of in Count Eleven is litigation against either TI or Alson, and not the Aldriches individually. Therefore, they have no claim as individuals under this count. Accordingly, the Demurrer to the Aldriches' being a proper party is sustained as to Counts Three, Four, Seven, Eight, Nine, Ten, and Eleven.

### (2) *Standing of Plaintiffs as Assignees of Transparencies, Inc.*

The Motion for Judgment alleges that the Plaintiffs have sued as assignees of any rights of which TI may have against OPNB. The Defendant maintains that the assignment is not valid because it was made during the period of time that TI was in Chapter 11 proceedings in Bankruptcy Court and no approval of the Bankruptcy Court was secured.

Clearly § 8.01-26 of the Code of Virginia (1950), as amended, allows assignment of claims for damage to real or personal property. The problem in this case, however, is that the assignment was made during a period of time that TI was under the jurisdiction of the United States Bankruptcy Court. The bankruptcy statutes do not allow a transfer of property without approval of the court. It is clear that TI did not secure the approval of the court. The effect of an order of bankruptcy dismissal is set forth under 11 U.S.C. § 349. This section of the Bankruptcy Code provides in part:

> (b) Unless the court, for cause, orders otherwise, a dismissal of a case other than under § 742 of this title . . . (3) revests the property of the estate in the entity in which such property was vested immediately before the commencement of the case under this title.

Clearly, if TI had any cause of action against OPNB, that cause of action existed prior to the time it filed the Chapter 11 proceeding. Therefore, any claim of TI against OPNB revested in TI upon the voluntary dismissal of the bankruptcy proceeding because TI failed to obtain approval of the assignment by the Bankruptcy Court. Accordingly, the Aldriches do not have any standing to bring this action as assignees of any right of action of TI since this right revested in TI under the provisions of the Bankruptcy Code. Therefore, the Demurrer is granted as to TI, and TI is dismissed as a party.

### (3) *Standing of Plaintiffs as Partners in Alson, Ltd.*

As noted above, the Aldriches have brought this action individually, as partners of Alson, and assignees of Transparencies. The Demurrer of the Defendant complains that Alson has not properly brought suit in the partnership name. The Defendant maintains that the Plaintiffs did not follow the provisions of § 50-8.1 of the Code of Virginia and sue in the actual name of the partnership.

Until the adoption of § 50-8.1, the proper method for a partnership to sue or be sued was to bring the suit in the names of all of the partners. 14A M.J., *Partnerships*, § 8. Additionally, the Supreme Court of Virginia held in 1973 that it was not essential to name the partnership as a party (defendant) in a suit where the partners had been sued individually. *McCormick v. Romans and Gunn*, 214 Va. 144, 147, 198 S.E.2d 651 (1973).

Section 50-8.1 of the Code of Virginia (1950), as amended, does not change the common law rule. It merely allows the partnership to sue or be sued in the partnership name. Thus, because the Plaintiffs have made both of the partners of Alson parties, the Plaintiffs properly have standing as partners.

### (4) *Count One: Tortious Interference with Prospective Purchaser*

The Plaintiffs allege that OPNB knew that the Aldriches had a prospective purchaser for fifty percent of the stock they owned in TI. Under the allegations of Count One, the Plaintiffs allege that by involving itself in negotiations, conducting interviews, and other actions, OPNB caused the purchasers to abandon the purchase of the stock.

Only the Aldriches individually have standing on this Count because the negotiations were with them to purchase one-half of their stock. Thus, the Demurrer is granted as to the standing of Alson or TI on this claim be-

cause they have no interest in the corporate stock which was the subject of the negotiation.

Additionally, in *Duggin v. Adams*, 234 Va. 221, 360 S.E.2d 832 (1987), the Supreme Court of Virginia considered a tortious interference with a contract case where a contract terminable-at-will was involved. In *Duggin*, the Supreme Court of Virginia set forth the requisite elements for a *prima facie* showing of tortious interference with contract which is *not* terminable-at-will as follows:

> (1) the existence of a valid contractual relationship or business expectancy; (2) knowledge of the relationship or expectancy on the part of the interferor; (3) intentional interference inducing or causing a breach or termination of the relationship or expectancy; and (4) resultant damage to the party whose relationship or expectancy has been disrupted. *Id.* at 226.

The Court in *Duggin v. Adams* went further to hold, however, that when a contract is terminable-at-will, in order to make a *prima facie* case, the Plaintiff must allege and prove not only an intentional interference that caused termination of the at-will contract, but also that the Defendant employed "improper methods." Additionally, the Court said that methods of interference considered improper are those means that are illegal or independently tortious, such as violations of statutes, regulations, or recognized common law rules. *Id.* at 227.

Clearly, the alleged contract between the Aldriches and their purchasers was terminable-at-will. There was no written agreement alleged. Under the allegations of the Motion for Judgment, no illegal actions on the part of OPNB or independent torts on behalf of OPNB have been alleged. At most, it is alleged that OPNB was involved in the negotiations. Thus, the Demurrer to Count One must be sustained, and Count One is dismissed.

## (5) *Count Two: Breach of Duty of Good Faith and Fair Dealing*

Utilizing § 8.1-203 of the Code of Virginia (Virginia Commercial Code), the Plaintiffs assert that OPNB breached its duty of good faith and fair dealing. In essence, the Plaintiffs argue that this provision of the Commercial Code creates an independent cause of action. This Court can find no state or federal decision in Virginia that has held that there is an independent cause of action based on this provision. The United States District Court of the Western District of Virginia has specifically held in the case of employment contracts there is no such duty implied. *Sneed v.*

*American Bank Stationery Co.*, 764 F. Supp. 65, 67 (W.D. Va. 1991). This same reasoning applies in commercial transactions.

Accordingly, the Demurrer is sustained as to this Count, and Count Two is dismissed.

### (6) *Count Three: Violation of Virginia Code § 8.9-503*

The Demurrer is sustained as to Count Three, and Count Three is dismissed. It is true that § 8.9-503 of the Code of Virginia (1950), as amended, provides that a secured party may proceed without judicial process if it can be done without a breach of the peace. In the instant case, there are no allegations in the Motion for Judgment which rise to the level of a breach of peace. Thus, the Demurrer must be sustained.

At best, Plaintiffs consented to the constructive seizure. Further, under the pleadings in the Motion for Judgment, the Bank representatives left the premises when asked to leave.

### (7) *Count Four: Wrongful Seizure*

The Demurrer to Count Four is granted, and Count Four is dismissed. By definition, there can be no wrongful seizure of property in which Alson claimed ownership and granted a security interest to OPNB. The financing statement referenced in the Motion for Judgment and attached to the Demurrer lists the property of Alson that OPNB sought to possess. The Plaintiffs cannot grant a security interest in personal property and then object when the secured party tries to execute its rights in the property.

### (8) *Count Five: Tortious Interference with Contract*

The Demurrer to Count Five is sustained to the extent that the allegations do not set forth whether the contract was terminable-at-will, do not allege that the contract was breached, and do not specifically set forth how the Plaintiffs suffered damages from the alleged interference with contract. Further, if the contract is terminable-at-will, it must specifically set forth the improper means (illegal or independently tortious) that were used. *Duggin v. Adams*, 234 Va. 221, 226-227, 360 S.E.2d 832 (1987). The Plaintiffs, however, are granted leave to file an Amended Count Five setting forth the type of contract (terminable-at-will or not), the manner in which breach of the contract was caused to occur, the type of improper means employed (if the contract is terminable-at-will, and specific allegations as to how damages accrue to the Plaintiffs as a result of this interference. The Plaintiffs will have until June 15, 1993, to file their amended pleading, and the Defendant will have twenty-one days after the filing of

the amended pleading to file any further responsive pleading which the Defendant wishes to file.

### (9) Count Six: Breach of Fiduciary Duty

In essence, Count Six alleges that the actions of the Bank in taking constructive possession of the assets created a fiduciary relationship between the Bank, Alson, TI, and the Aldriches. Count Six further pleads that such fiduciary duty was breached when the Bank did not accept the offer of McNider to release the assets claimed by OPNB for the payment of the sum of $75,000.00 from McNider.

There is no common law or statutory support in Virginia which supports the creation of a fiduciary duty between a bank and its debtor/customer when the bank and the customer have a creditor/debtor relationship. The Plaintiff attempts to use the provisions of § 8.1-203 of the Code of Virginia to argue that a fiduciary relationship is created by the good faith requirement for all commercial transactions set forth in such statute. There is no case in Virginia that has given this statutory provision any remedial effect. This Court holds that § 8.1-203 is merely directory and not remedial. (See discussion of Count Two.)

At page 66 of their brief, the Plaintiffs set forth cases from jurisdictions other than Virginia where a fiduciary relationship was allegedly created between a lender and its borrower. The basic rationale of these cases is that a fiduciary relationship arises whenever a lender exercises extensive control over the borrower. Even if this test was adopted in Virginia, the pleadings do not meet this standard. The pleadings actually admit that OPNB's representatives withdrew from the premises once they were requested to leave by the Plaintiffs. Further, there is no allegation that OPNB controlled the business transactions of any of the Plaintiff entities while in constructive possession of the premises. Thus, the allegations do not support creation of a fiduciary relationship, much less a breach of a fiduciary relationship, even if the rule from other jurisdictions should be adopted.

The Demurrer is sustained as to this count of the Motion for Judgment, and accordingly, Count Six is dismissed.

### (10) Count Seven: Conversion

In Count Seven of their Motion for Judgment, the Plaintiffs allege a conversion of the assets by OPNB by virtue of the "constructive seizure" which lasted from August 12, 1991, to August 27, 1991. The Defendant files its Demurrer to the conversion count on the grounds that there was no

wrongful possession by OPNB due to the lien of its financing statement and due to the consent of the Plaintiffs.

The Supreme Court of Virginia has defined conversion as follows:

> Conversion is any wrongful exercise or assumption of authority, personally or by procurement, over another's goods, depriving him of their possession. *Credit Corp. v. Kaplan*, 198 Va. 67, 75, 92 S.E.2d 359 (1956).

Additionally, in *Kaplan*, the Supreme Court of Virginia further stated:

> Any act of dominion wrongfully exerted over property in denial of the owner's right, or inconsistent with it, amounts to a conversion. *Id.* at 75.

In the instant case, the pleadings of the Plaintiffs indicate that there was a financing statement on the property claimed by the Bank. Thus, a seizure or a constructive seizure of the assets contained in the financing statement cannot be wrongful by its own terms if the Bank had a lien on the assets.

Additionally, by the pleadings, the business of the Plaintiffs was continuing to operate even though the Bank had a representative on the premises. As soon as the Plaintiffs exercised their right to object to the presence of the Plaintiffs, the representatives of the Plaintiffs were no longer on the premises. Thus, any action taken by the Bank was with consent, and without any objection, until August 27th when the Plaintiffs announced that the seizure was ended. At that point, the Bank no longer occupied the premises.

Accordingly, under the pleadings of this case, there has been no conversion alleged. Thus, the Demurrer must be sustained on this conversion count, and Count Seven is dismissed.

## (11) *Count Eight: Duress*

The Plaintiffs allege that they were placed under duress to submit to a constructive seizure of their assets by virtue of the threat of the Defendants to actually seize their assets. The Defendant files a Demurrer to this count asserting that duress is not a cause of action in Virginia but rather an affirmative defense in contract cases, or, in the alternative, that by definition, it is not duress for the Bank to secure possession of assets upon which it has a lien.

This Court agrees with the Demurrer of the Defendant to Count Eight. There is no affirmative cause of action or tort for duress recognized in

Virginia. It is only an affirmative defense in contractual actions to justify rescission of the contract. 6B M.J. *Duress and Undue Influence*, §§ 2-12.

Additionally, the Bank has a lien on the assets which it sought to obtain possession by virtue of its financing statement. Duress cannot occur where the Bank exercises its legal right to obtain possession of the assets through its lien. *Bond v. Crawford*, 193 Va. 437, 444, 69 S.E.2d 470 (1952).

Accordingly, the Demurrer is sustained as to Count Eight, and Count Eight is dismissed.

### (12) *Count Nine: Trespass*

In Count Nine, the Plaintiffs assert that the occupation of their facility by the Bank from August 12, 1991, to August 27, 1991, constituted a trespass. The Defendant files a Demurrer to Count Nine on the grounds that the pleadings indicate that the requirements for a trespass did not occur.

The Plaintiffs' pleadings clearly indicate that the Plaintiffs acquiesced to the presence of the Bank's representatives on the premises of the Plaintiffs. (*See* paragraphs 17 and 55.) Additionally, when the Defendant indicated their withdrawal of consent, OPNB left the premises. (*See* paragraph 18.)

A trespasser is defined as one who goes on the property of another *without invitation*, express or implied, for his own purpose. *Huffman v. APCO*, 415 S.E.2d 145, 148 (W. Va. 1991). Further, a trespass that is committed under a bona fide claim of right is not willful. *Payne v. Consolidation Coal Co.*, 607 F. Supp. 378, 381 (W.D. Va. 1985). In the instant case, the pleadings clearly indicate an acquiescence of the Plaintiffs to the Defendant's representative on the premises. Additionally, the Defendant was proceeding under its financing statement to exercise its right to possession of the property. As such, it was acting under a bona fide claim of right.

Accordingly, the Demurrer is sustained as to Count Nine, and Count Nine is dismissed.

### (13) *Count Ten: Slander of Title*

In Count Ten, the Plaintiffs assert that the Bank's prelitigation claims to a lien of attachment, lien of distress, and/or a right to possess with respect to the assets constituted a slander of title. The Defendant files a Demurrer to Count Ten on the grounds that by filing its financing statements, Alson asserted its claim of title to the personal property assets.

In order to prove slander of title, the Plaintiffs must show that the Defendant acted with malice or in reckless disregard to the truth or falsity of the title. *Wright v. Castles*, 232 Va. 218, 224, 349 S.E.2d 125 (1986).

In the instant case, with the financing statements which have been admitted to by both parties, the Defendants could not have acted with malice or in reckless disregard to the truth or falsity of the title to the personal property because Alson has asserted in a public filing that they hold title to the very same property.

Additionally, TI is not a party to this litigation, and there has not been a proper assignment of the claim of TI. At the most, only TI would be able to assert a claim for slander of title, and TI is not a party as the Court has previously ruled.

Accordingly, the Demurrer must be sustained, and Count Ten is dismissed.

**(14)** *Count Eleven: Unfounded Litigation*

In Count Eleven, the Plaintiffs seek to recover on the theory of unwarranted and unfounded litigation. This is based upon the allegation that OPNB assumed allegedly contradictory positions in different courts when it sought to either attach or utilize a distress action to obtain the personal property assets.

The Demurrer must be sustained on this Count because unwarranted and unfounded litigation is not a cause of action in the State of Virginia. Conceivably, it could be argued that facts supporting either a claim for perjury, malicious abuse of process, or malicious use of process have been alleged. However, the facts do not support any of these theories. The tort of perjury is not recognized in Virginia. An abuse of process claim is a claim where a properly issued process is perverted to a use not contemplated by the law. *Glidewell v. Murray-Lacy & Co.*, 124 Va. 563, 569, 98 S.E. 665 (1919). In the instant case, the claim is that the Bank obtained a distress warrant and attachment action through false affidavits. Thus, the Plaintiffs are complaining that the process was not properly issued in its inception. This is not an element of an abusive process claim.

The third possible cause of action alleged is malicious prosecution or use of process. In order to sustain this cause of action, there must be lack of probable cause and the action must have terminated favorably to the Plaintiffs in the original suit. 14B M.J., *Process*, § 61.

In this case, the pleadings show that there was probable cause because the Plaintiffs had actually signed a financing statement indicating owner-

ship of the assets. Even more detrimental to such a cause of action, however, is that there was no termination of the original distress or attachment suits favorable to the Plaintiffs alleged in the pleadings.

Accordingly, the Demurrer must be sustained as to this Count, and Count Eleven must be dismissed.