## CIRCUIT COURT OF FAIRFAX COUNTY

Judith Coker

v.

State Farm Fire
and Casualty Co.

June 4, 1998

Case No. (Law) 161002

BY JUDGE STANLEY P. KLEIN

This case is before the Court on Defendant State Farm and Casualty Company's ("State Farm") Plea in Bar to Counts I and II and Demurrer to Count II of the Amended Motion for Judgment[1] filed by Judith Coker. State Farm's Plea in Bar contends that Counts I and II are time barred by the limitation period in the applicable insurance policy, and State Farm's Demurrer to Count II asserts that no cause of action exists under Virginia law for a breach of an implied duty of good faith in a first-party insurance context. The Court has considered the written and oral arguments of counsel and the relevant authorities. For the reasons set forth in this opinion letter, Defendant State Farm's Plea in Bar is sustained as to both counts, and as a result, this Court need not address the merits of State Farm's Demurrer.

### I. The Relevant Facts

Judith Coker and her former husband, Jeffrey Evans, insured their home with a homeowner's policy ("Policy") issued by State Farm. On June 7, 1994,

---

[1] At oral argument, Coker's counsel stipulated that State Farm's Plea in Bar to the Motion for Judgment should be treated as a Plea in Bar to the Amended Motion for Judgment, even though the Plea in Bar was filed prior to the filing of the Amended Motion for Judgment.

a fire severely damaged the home and its contents. At the time of the fire, Coker and Evans were separated and were in the process of negotiating a Property Settlement Agreement ("PSA"). The PSA, eventually signed by Coker and Evans on July 21, 1994, conveyed the home to Coker. Although there was no dispute that Coker would receive the proceeds relating to the repair of the home, Coker and Evans were unable to agree upon how the PSA affected the disbursement of the remaining insurance proceeds from the fire. To resolve their dispute, Coker and Evans filed a Declaratory Judgment action in this Court to construe their rights under the Policy, *Judith C. Evans v. State Farm Fire & Cas. Co. et al.*, Chancery No. 136477.

While making her claim to State Farm for the repair costs from the fire, Coker disputed the estimate of State Farm's contractor, the Minkoff Company, as incomplete and inaccurate. In response to the State Farm estimate, Coker submitted an estimate from Commonwealth Home Remodelers ("Commonwealth"). State Farm noted its objections to Commonwealth's bid, and Coker attempted to modify her estimate in light of State Farm's objections. On June 9, 1995, State Farm provided an updated repair estimate to Coker which was lower than the Minkoff Company and Commonwealth estimates.

Coker and State Farm eventually reached an interim agreement, set forth in a Revised Order Granting Interpleader entered by the Court on August 4, 1995, in the Declaratory Judgment action. The agreement authorized State Farm to pay into court the full payment of the Actual Cash Value portion of the claim and provided that the parties "reserved all rights under the Replacement Cost provisions of the Policy." (Actual Cash Value is payable based on a determination of the cash value of the loss at the time of the loss. This amount is subject to supplementation for Replacement Costs as the repairs are actually effected.)

Commonwealth completed the repairs to Coker's home, and Coker subsequently submitted claims for the repairs to State Farm. State Farm declined to pay any of Coker's claims in excess of the State Farm updated estimate and issued a check to Coker for $16,525.82 on March 5, 1996. The discrepancy between State Farm's payments to Coker and the cost of Commonwealth's repairs was $74,557.58.

On May 5, 1997, almost three years after the fire, Coker filed this action against State Farm. In Count I, Coker sought to recover funds used to repair the house and related expenses in excess of State Farm's payment, totaling $102,574.99. Count II was a bad faith claim based upon State Farm's refusal to pay Coker's Replacement Cost claims, praying for recovery of attorney's

fees under Va. Code § 38.2-209. In response to the Motion for Judgment, State Farm filed the instant Plea in Bar. After the presentation of evidence and argument on the Plea in Bar, this Court permitted Coker to amend her Motion for Judgment to clarify that in Count II she sought all of the damages prayed for in Count I, in addition to the claim for attorney's fees. State Farm subsequently demurred to Count II of Coker's Amended Motion for Judgment and, by agreement, renewed its Plea in Bar to both counts. After further oral argument, the Court took the Plea in Bar and Demurrer under advisement.

## II. *Plea in Bar to Count I*

A plea in bar is a defensive pleading that reduces the litigation to a single issue of fact which, if proven, creates a bar to the suit. *Weichert Co. of Va. v. First Commercial Bank*, 246 Va. 108, 109, n. 1 (1993). The moving party carries the burden of proof on that issue.*Id.*

State Farm asserts that both counts of Coker's Amended Motion for Judgment are barred by the limitation period set out in the insurance policy, which provides:

8. *Suit Against Us.* No action shall be brought unless there has been compliance with the policy provisions. The action must be started within *two years* after the date of the *loss or damage.*

(Emphasis supplied.)

Coker responds that Va. Code § 38.2-2105(b) requires that the wording set forth in Va. Code § 38.2-2105(a) be included in each fire insurance policy issued in the Commonwealth. That statutory provision requires language stating:

No suit or action on this policy for the recovery of any claim shall be sustainable in any court of law or equity unless all the requirements of this policy shall have been complied with, and unless commenced within two years next after inception of the loss.*Id.*

(Emphasis supplied.)

Coker contends that as the State Farm Policy uses the language "within two years after the date of loss *or damage*" (emphasis supplied) instead of "within two years after the inception of the loss," the Policy provides additional rights to those required by the statute. Coker asserts that by adding

the term "or damage," State Farm acknowledged there can be two different accrual dates for causes of action arising from the same occurrence under the Policy. Here, according to Coker, the "loss" occurred on the date of the fire, but the "damage" occurred on March 5, 1996, when she claims State Farm first informed her that it would not consider additional submissions and denied her claims in excess of the payments already approved.

In response, State Farm asserts that Va. Code § 38.2-2107 authorizes an insurance company to use simplified language as an alternative to the language found in Va. Code § 38.2-2105. Further, State Farm contends that under the plain language of the Policy, there is no difference between "loss" and "damage," and therefore, Coker's argument is without support in either law or fact.

Insurance policies are contracts, and their terms are construed in accordance with the general principles applicable to all contracts. *Allstate Ins. Co. v. Eaton*, 248 Va. 426, 431 (1994); *State Farm Fire & Cas. Co. v. Walton*, 244 Va. 498, 502 (1992); *Quesenberry v. Nichols and Erie*, 208 Va. 667, 672 (1968); *Carter v. Carter*, 202 Va. 892, 896 (1961); *Ampy v. Metropolitan Cas. Ins. Co.*, 200 Va. 396, 400 (1958). Where there is ambiguity in the terms of an insurance policy, such terms should be liberally construed in favor of the insured and against the drafter of the policy; however, no strained or unjustified construction of the policy should be adopted which disregards the plain meaning and intent of the parties. *First Am. Title v. Seabord S. & L.*, 227 Va. 379, 384 (1984). In construing a contract, a court must "read the contract as a single document, the meaning of which is gathered from all its associated parts when assembled as the unitary expression of the agreement of the parties." *Quesenberry*, 208 Va. at 670. If the terms of the contract do not conflict with any provision of law, the terms of the contract, as written, will govern and limit the extent of recovery under the policy. *Dairyland Ins. Co. v. Douthat*, 248 Va. 627, 631 (1994); *Eaton*, 248 Va. at 431.

The language in the Policy regarding the two-year limitations period is statutorily-mandated language under Va. Code § 38.2-2105, subject to the caveat that a fire insurance policy may contain simplified language as long as the new language is no less favorable to the insured.[2] Va. Code § 38.2-2107. Therefore, the principal issue for this Court to determine centers on the effect,

---

[2] Coker does not challenge the fact that the Policy language which deviates from the Va. Code § 38.2-2105 language was properly approved by the State Corporation Commission as required by Va. Code § 38.2-2107.

if any, the addition of the language "or damage" has on the limitations section of the Policy.

When the Court reviews the Policy as a whole, it becomes clear that the Policy uses the terms "loss" and "damage" interchangeably throughout the contract. The following paragraphs from the Policy provide examples:

1. *Amendatory Endorsement, for Extra Form 5 Section I-Conditions. 3. Loss Settlement.* Replaces a Policy provision with new language relating to *loss* of personal property and replaces another provision with new language regarding the repair of *damaged* buildings or other structures.

2. *State Farm Homeowners Extra Policy, Section 1-Additional Coverages: 1. Debris Removal.* "We will pay the reasonable expenses you incur in the removal of debris of covered property when coverage is afforded for the peril causing the *loss*. We will also pay reasonable expenses for removal of fallen trees which cause *damage* to the covered property."

3. *Additional Coverages: 2. Temporary Repairs.* "We will pay ... for temporary repairs to covered property to protect the property from further immediate *damage* or *loss*."

4. *Additional Coverages: 6. Refrigerated Products.* The provision covers contents of refrigerated units from *loss* due to power or mechanical failure but "does not increase the limit applying to the *damaged* property."

5. *Additional Coverages: 10. Jewelry and Furs.* Jewelry and Furs are insured for "accidental direct physical *loss* or *damage*."

6. *Additional Coverages: 12. Volcanic Action.* "We cover direct physical *loss* to a covered building or covered property contained in a building caused [by the eruption of a volcano] ... . This coverage does not increase the limit applying to the *damaged* property."

7. *Losses Insured, Coverage B - Personal Property: 2. Windstorm or Hail.* "This peril does not include *loss* to a property in a building caused by rain, snow, sand, sleet, or dust. This limitation does not apply when the direct force of wind or hail *damages* the building causing an opening in the roof ... ."

8. *Losses Insured, Coverage B - Personal Property: 7. Smoke.* "Meaning sudden and accidental *damage* from smoke. This peril does not include *loss* caused by smoke from agricultural smudging or industrial operations."

9. *Losses Insured, Coverage B - Personal Property: 10. Falling objects.* "This peril does not include *loss* to property contained in a building unless the roof or an exterior wall of the building is first *damaged* by a falling object."

10. *Losses Insured, Coverage B - Personal Property: 16. Breakage of Glass.* "Meaning *damage* to personal property caused by breakage of glass

which is part of a building on the residence premises. There is no coverage for *loss* or *damage* to the glass."

11. *Losses Not Insured*: 1. "We do not insure for any *loss* to the property described in Coverage A ... regardless of if the *loss* occurs suddenly or gradually, involved isolated or widespread *damage* ... or as a result of any combination of these."

12. *Losses Not Insured: 2c. Water damage.* "However, we do not insure for any direct *loss* by fire, explosion, or theft resulting from water *damage*, provided the resulting *loss* is itself a *Loss* Insured."

13. *Conditions: 2. Your Duties After Loss.* "After a loss to which this insurance may apply, you shall see that the following duties are performed .... b. Protect the property from further *damage* or *loss*."

14. *Glass replacement.* "*Loss* for *damage* to glass caused by a *loss* insured shall be settled on the basis of replacement with safety glazing materials when required by ordinance or law."

In construing this Policy, reading the contract as a single document and considering the Policy as a whole, the provisions set out above establish that the terms "loss" and "damage" are used interchangeably throughout the Policy and have one and the same meaning. Virginia Code § 38.2-2107 permits insurance companies to use simplified language that deviates from the standard Va. Code § 38.2-2105 policy language as long as the simplified terms are no less favorable to the insured. The Court rejects Coker's argument that the inclusion of the phrase "or damage" in the limitation provision of the policy creates additional rights for the insured. To rule otherwise would create precedent that could potentially thwart the obvious intent of the General Assembly in its enactment of Va. Code § 38.2-2107 to allow fire insurance policies to be more "reader friendly." In addition, to accept Coker's proposed interpretation of the Policy could lead to absurd results,[3] *see Transit Cas. Co. v. Hartman's Inc.*, 218 Va. 703, 708 (1978), and directly contravene the clear intent of the General Assembly in enacting Va. Code § 38.2-2105. This court declines to so construe the limitation provision of the Policy. Accordingly, State Farm's Plea in Bar to Count I is sustained.

---

[3] For example, if no "damage" occurs until the insured pays out funds for repairs as orally argued by Coker at the hearing, a policy holder could expend funds twenty years after a fire to effect repairs and assert that the limitation period had not expired because the "damage" had just been incurred. Moreover, if no "damage" occurs until the insurer unequivocally states that it will not consider any further submissions from the insured, as argued by Coker on brief, the intent of Va. Code § 38.2-2105 to have all suits relating to fire losses filed within two years of the fire would be effectively nullified.

## III. *Plea in Bar and Demurrer to Count II*

In Count II of her original Motion for Judgment, Coker sought recover of her attorney's fees and costs based upon State Farm's "bad faith" pursuant to Va. Code § 38.2-209. At oral argument on Defendant's Plea in Bar to the Motion for Judgment, counsel for Coker represented that Count II was intended to set forth a claim for a tort of bad faith refusal to honor the terms of an insurance policy seeking not only attorney's fees and costs but also the amount of the replacement costs claimed by Plaintiff. Counsel sought and was granted leave to amend Count II to set forth such an alleged cause of action.

In her Opposition to State Farm's Demurrer to Coker's Amended Motion for Judgment, Coker modified her previous position and asserted that Count II of the Amended Motion for Judgment sounded in contract, not tort. As the Virginia Supreme Court has not yet recognized such a cause of action in the first party insurance context,[4] Coker relies on cases from the United States Court of Appeals, the United States District Courts, and a Virginia Circuit Court in urging this Court to accept such a claim. *A & E Supply Co. v. Nationwide Mut. Fire Ins.*, 798 F.2d 669 (4th Cir. 1986), *cert. denied*, 479 U.S. 1091 (1987) (insurer can be sued in contract for bad faith failure to pay claim); *Florists' Mut. Ins. Co. v. Tatterson*, 802 F. Supp. 1426 (E.D. Va. 1992) (insurance contracts include an implied covenant of good faith, requiring an insurer to make a fair settlement of claims when liability is reasonably clear); *Morgan v. American Family Life Assurance Co. of Columbus*, 559 F. Supp. 447, 482-83 (W.D. Va. 1983) (bad faith claim in tort recognized); *Harris v. USAA Cas. Ins. Co.*, 37 Va. Cir. 553 (1994) (there is a duty of good faith in a first-party insurance context, but the breach of the duty gives rise to a claim for breach of contract, but not a tort claim); *see also, Carpenter & Co. v. Virginia-Carolina Chemical Co.*, 98 Va. 177 (1900) (in a contract where performance is determined by a party's satisfaction and the goods are not for the gratification of the party's individual taste, the party has a duty to act in good faith when determining whether or not performance was satisfactory).

State Farm responds that no such cause of action in a first-party context should be recognized. In addition to the lack of authority from the Virginia Supreme Court recognizing such a cause of action, State Farm notes that the Virginia General Assembly has had the opportunity to recognize a general

---

[4] In a third-party context, in *Aetna v. Price*, 206 Va. 749 (1966), the Supreme Court recognized the potential liability of an insurer for an excess judgment obtained against the insured arising from the insurer's refusal to settle a claim within the policy limits.

cause of action for bad faith but has on each occasion declined to do so. See Va. Code § 38.2-209 (only attorney's fees allowed); Va. Code § 8.01-66.1 (only attorney's fees and interest allowed); and Va. Code § 38.2-500 et seq. (Unfair Trade Practices Act, injunctive relief and limited statutory remedies permitted). State Farm further asserts that the more persuasive case authority belies Coker's position. *Ward's Equipment, Inc. v. New Holland North America, Inc.*, 254 Va. 379 (1997) (when parties to a contract create valid and binding rights, an implied covenant of good faith and fair dealing is inapplicable to those rights); *Spiller v. James River Corp.*, 32 Va. Cir. 300 (1993) (Virginia law does not recognize a claim for breach of a covenant of good faith and fair dealing); *Sneed v. American Bank Stationery Co.*, 764 F. Supp. 65 (W.D. Va. 1991) (Virginia does not recognize an implied covenant of good faith and fair dealing); *Aldrich v. Old Point National Bank*, 35 Va. Cir. 545 (1993) (Va. Code § 8.1-203 does not create an independent cause of action for breach of duty of good faith).

Under the facts of this case, however, this Court need not decide whether Virginia should recognize a cause of action sounding in contract for breach of an implied duty to use good faith in settling first-party insurance contracts. Even if such a cause of action does exist, the limitations period contained in the Policy constitutes an absolute bar to Coker's claim herein.

Coker concedes on brief that Count II sets out a cause of action sounding solely in contract. As such, contract, not tort principles govern. Parties may contractually fix their own limitations period, even if the period is shorter than that prescribed by statute, provided that the agreed time is not unreasonably short or against public policy. *Commercial Construction Specialties, Inc. v. ACM Construction Management Corp.*, 242 Va. 102, 106 (1991); *Board of Supervisors v. Sampson*, 235 Va. 516, 520 (1988); *see also Southwood Builders, Inc. v. Peerless Ins.*, 235 Va. 164, 172 (1988). The Policy unambiguously requires that any action for breach of that contract must be "started within two years after the date of loss or damage." As resolved above, the date of loss or damage was June 7, 1994, the date of the fire. Hence, any claim for breach of the Policy, including any claim for breach of an implied duty of good faith inherent in the contract, would necessarily have to have been instituted by June 7, 1996, well before this suit was filed. The limitations period fixed by the parties is not contrary to public policy, as it implements the intent expressed by the General Assembly in its enactment of Va. Code § 38.2-2105. Nor is the contracted limitations period unreasonably short. Even if the Court were to accept Coker's position that she did not know that State Farm was rejecting her claim until March 5, 1996, she still had over

three months to file her breach of contract claims before the two-year limitation period mandated by the Policy and the controlling statute expired.

The Court rejects Coker's position that her bad faith claim could not have accrued before March 5, 1996, when the bad faith denial occurred, and therefore, the two-year limitations period necessarily commenced to run at that time. In so arguing, Coker asks this Court to revise the contract between the parties. A court is precluded from rewriting a contract between two parties. *Fried v. Smith*, 244 Va. 355, 359 (1992) ("It is not the province of this Court to rewrite contractual language. Rather, it is incumbent upon courts to construe the language drafted by the parties."); *Graphic Arts Mut. Ins. v. Warthen Co.*, 240 Va. 457, 460 (1990) ("It is the function of the court to construe the contract made by the parties, not to make a contract for them."); *Bank of Southside Va. v. Candelario*, 238 Va. 635, 640 (1989) ("Courts will not rewrite contracts; parties to a contract will be held to the terms upon which they agreed."); *Rogers v. Yourshaw*, 18 Va. App. 816, 823 (1994) ("A court is not at liberty to rewrite a contract simply because the contract may appear to reach an unfair result."). In addition, to accept Coker's argument and hold that a cause of action for breach of contract arising from an implied duty of good faith in a fire insurance contract accrues only when the breach, rather than the loss occurs, would contravene the express provisions of Va. Code § 38.2-2105 and eviscerate the policy underlying that statute. This Court declines to establish a precedent whereby insureds could attempt to negate the terms of their contracts and Virginia law solely by asserting that the insurer acted in "bad faith." Accordingly, State Farm's Plea in Bar to Count II is also sustained.

## V. *Conclusion*

For the reasons set out above, Defendant State Farm's Pleas in Bar to both counts of the Amended Motion for Judgment are sustained, and this action is dismissed with prejudice.