## CIRCUIT COURT OF THE CITY OF NORFOLK

Raymond T. Harris et al.

v.

USAA Casualty Ins. Co. et al.

September 22, 1994

Case No. (Law) L94-369

BY JUDGE LYDIA CALVERT TAYLOR

Plaintiffs Raymond T. Harris, Judith Q. Harris, Brooke Harris, and Neile Harris filed this action against defendants, USAA Casualty Insurance Corporation, Kenneth W. Riddleburger, and Double K, Inc., on February 8, 1994. Plaintiffs alleged nine counts against defendant USAA and six counts against defendants Riddleburger and Double K.

On March 2, 1994, defendants Riddleburger and Double K were granted an extension to file responsive pleadings until March 28, 1994. On March 21, 1994, defendant USAA filed a demurrer and grounds of defense along with a motion to dismiss or stay. On March 25, 1994, defendants Riddleburger and Double K filed a demurrer. On April 7, 1994, plaintiffs filed a motion in opposition to defendant USAA's motion to dismiss and a motion joining defendant's motion to stay but suggesting modification.

On May 31, 1994, defendants Riddleburger and Double K filed a memorandum in support of their demurrer. On June 1, 1994, defendant

USAA filed a memorandum in support of its motion to dismiss and demurrer. On June 20, 1994, plaintiffs filed a reply memorandum to defendant USAA's motion to dismiss and demurrer. On June 29, 1994, defendants Riddleburger and Double K filed a reply memorandum in support of their demurrer. On July 1, 1994, defendant USAA filed a reply brief.

A hearing was held on July 21, 1994, at which arguments were heard on the motion to dismiss or stay of defendant USAA and the demurrer of defendants Riddleburger and Double K. Subsequent to that hearing, a number of the parties have filed supplemental memoranda and made additional arguments.

### Statement of Facts

"In reviewing the sufficiency of a motion for judgment on demurrer, the trial court is required to consider as true all material facts that are properly pleaded, facts which are impliedly alleged, and facts which may be fairly and justly inferred from the facts alleged." *Luckett v. Jennings*, 246 Va. 303, 307 (1993). Consequently, a summary of the facts, as alleged in plaintiffs' motion for judgment, would be helpful.

Plaintiffs are Mr. and Mrs. Harris and their daughters, Brooke and Neile. Their house in Kenbridge, Virginia, was insured for $235,489 in replacement costs by defendant USAA. On May 20, 1992, the house was destroyed by fire. The following day, William Blandford, Claims Adjuster for USAA, obtained signatures from plaintiffs on a "Non-Waiver Agreement" that permitted USAA to conduct a full investigation of the fire.

On May 22, 1992, defendants Kenneth Riddleburger and Double K, Inc., acting as agents for USAA, inspected the premises and later prepared a "cause and origin" report. Defendants USAA, Riddleburger, and Double K instigated and assisted a criminal prosecution against plaintiff Mr. Harris. Riddleburger and a USAA employee testified at the trial and were paid at all times by USAA.

On February 8, 1993, plaintiff Mr. Harris was acquitted by a jury.

Plaintiffs allege that USAA, Riddleburger, and Double K failed to conduct an independent and objective investigation of the fire, failed to comply with the Virginia Arson Immunity and Reporting Act, maliciously, recklessly, and wantonly instigated and assisted a criminal prosecution against Mr. Harris, and did so in order to avoid having to pay the claim. Plaintiffs also allege that defendants brought pressure on local authorities to ignore a bomb placement and threats against the Harrises and that

defendants failed to consider these in their investigation of the Harris' claim. (Motion for Judgment, ¶¶ 1-27.)

## Discussion

Defendant USAA demurs to all nine counts in plaintiff's motion for judgment. Defendants Kenneth Riddleburger and Double K, Inc., demur to each of the six counts that addresses them. Each count is considered separately.

## Count I: Breach of Contract

Plaintiffs allege that defendant USAA, "with the active assistance of Double K and Riddleburger," breached its contract of insurance with them. (Motion for Judgment, ¶ 30.) They also allege that "[t]he breaches by the defendant, USAA constitute independent torts against the plaintiffs whereupon punitive damages are appropriate." (Motion for Judgment, ¶ 34.)

The essential elements of a cause of action for breach of contract are: (1) a legal obligation of the defendant to the plaintiff, (2) a violation or breach of that right or duty, (3) and consequential injury or damage to the plaintiff. *Westminster Investing Corp. v. Lamps Unlimited*, 237 Va. 543, 546 (1989).

In *A & E Supply Co. v. Nationwide Mut. Fire Ins. Co.*, 798 F.2d 669, 676 (4th Cir. 1986), *cert. denied*, 479 U.S. 1091 (1987), the Fourth Circuit ruled that Virginia law imposes on insurance contracts an obligation on the part of the insurer "in good faith to effectuate prompt, fair and equitable settlements of claims in which liability has become reasonably clear." This obligation is a matter of contract law rather than tort law and will support a recovery of full general and consequential damages. *Id.* at 676-77.

As to defendant USAA's demurrer to plaintiff's contract claim for compensatory damages, plaintiffs allege that defendant USAA breached policy obligations to pay replacement costs for their dwelling, to pay the full policy limits, and to conduct its dealing in good faith. (Motion for Judgment, ¶¶ 29, 31, 32.) This is sufficient under the lenient standard for pleading of breach of contract actions:

> [A] demurrer will not be sustained where a motion for judgment states the substance but not the details of an alleged contract because the details may be obtained by motion for a bill of particulars.

*Allen v. Aetna Casualty & Surety*, 222 Va. 361, 363 (1981).

Defendant USAA's demurrer is overruled to the extent plaintiffs seek direct damages, those that flow "naturally or ordinarily" from the breach, and consequential damages, those that result from "special circumstances [that] were within the contemplation of the contracting parties." *See Richmond Medical Supply v. Clifton,* 235 Va. 584, 586 (1988).

However, plaintiffs also ask punitive damages for breach of contract, to which defendant USAA has demurred. Virginia law requires an "independent, willful tort, beyond the mere breach of a duty imposed by contract, as a predicate for an award of punitive damages." *Kamlar Corp. v. Haley,* 224 Va. 699, 707 (1983). "Since no election between tort and contract is now required [under current code § 8.01-272], a plaintiff seeking punitive damages should allege a willful, independent tort in a count separate from that which alleges a breach of contract." *Id.* Under *Kamlar,* even allegations of a breach of contract that amounts to an independent tort cannot support a plea for punitive damages. *Id.* at 707 & n. 2; *see also id.* at 711 (Compton, J., *dissenting*). A tort must be pleaded in a separate count and proved in order to get punitive damages.

Plaintiffs' plea under the contract for punitive damages, therefore, is not allowable under Virginia law.

Justice Compton protests, in his dissent to *Kamlar,* that a number of federal courts had interpreted the Virginia Supreme Court's earlier rulings, including *Anchor Co. v. Adams,* 139 Va. 388 (1924), and *Wright v. Everett,* 197 Va. 608 (1956), as allowing punitive damages when the breaching party acted from a malicious ulterior motive and his actions amounted to a tort. *Kamlar, supra,* at 709-10 (Compton, J., *dissenting*).[1] This rule was applied by the federal courts even in cases where an independent tort was not alleged or proved, as long as the conduct of the party in breaching the contract amounted or was analogous to a tort. *Id.* at 708. Despite those prior interpretations of the Virginia law as to when punitive damages were available for breach of contract, there can no longer be any confusion on the issue after *Kamlar.*

---

[1] For example, Judge Kiser in a pre-*Kamlar* decision relied on *Wright v. Everett, supra,* for its holding that the defendant's conduct was so egregious in breaching its insurance contract with plaintiff that its conduct constituted an independent tort, even though none was pleaded by the plaintiff. *Mize v. Hartford Ins. Co.,* 567 F. Supp. 550, 555 (W.D. Va. 1982). Clearly, *Kamlar* would compel a new ruling on the issue today. *Morgan v. American Family Life Assurance Co.,* 559 F. Supp. 477 (W.D. Va. 1983), although decided almost two months after *Kamlar,* makes no reference to *Kamlar,* the court apparently being unaware of the *Kamlar* decision.

The majority in *Kamlar* state the issue to be whether a breach of contract will support punitive damages absent an independent willful tort. *Id.* at 704. Justice Compton believed the 1977 Amendment allowing joinder of tort and contract actions, § 8.01-272, was a factor in the evolution of the courts' holdings on this issue. Even Judge Williams' opinion in *A & E Supply*, which was overturned on other grounds by the Fourth Circuit, conceded that *Kamlar, supra*, had changed Virginia law, in part because of the passage of § 8.01-272 in 1977. *A & E v. Nationwide Ins. Co.*, 612 F. Supp. 760 (W.D. Va. 1985), *rev'd on other grounds*, 798 F.2d 669 (4th Cir. 1986). He acknowledged the need for proof of an independent tort before punitive damages could be recovered. 612 F. Supp. at 766.

Even a malicious motive is not enough now to recover punitive damages in a contract action under Virginia law. *Kamlar, supra*, at 711. An independent, willful tort must be pleaded and proved as a count separate from the breach of contract count. *Id.* at 707. Without proof of such a tort, no matter how wanton the conduct or malicious the motive, punitive damages cannot be had for breach of contract. *Id.*

Thus, defendant USAA's demurrer to the contract claim is denied, except for that part of the claim asking punitive damages, as to which USAA's demurrer is sustained.

With respect to defendants Riddleburger and Double K, plaintiffs do not allege the existence of any contract between themselves and Riddleburger or Double K. Consequently, the demurrer of defendants Riddleburger and Double K to plaintiffs' entire action for breach of contract is sustained.

### Count II: Estoppel/Waiver

Count II was withdrawn by plaintiffs during oral argument.

### Count III: Intentional Infliction of Emotional Distress

Plaintiffs allege a cause of action for intentional infliction of emotional distress against defendants USAA, Kenneth Riddleburger, and Double K, Inc.

The essential elements of a cause of action for intentional infliction of emotional distress are: (1) conduct that is intentional or reckless, (2) outrageous and intolerable, and (3) causally connected with (4) severe emotional distress. *Russo v. White*, 241 Va. 23, 26 (1991).

This tort is disfavored in Virginia. This is in part because, unlike other torts, the behavior proscribed lacks a precise definition, the term "outrageous" giving no clear guidance as to what acts might be encompassed.

*Ruth v. Fletcher*, 237 Va. 366, 373 (1989). On demurrer, intentional infliction of emotional distress requires more than conclusory allegations of fact. *Russo*, 241 Va. at 28. *Russo* contrasts the tort of negligence, for which a claim is sufficient without specifying the particulars, and intentional infliction of emotional distress, which requires the pleading of "all facts necessary to establish the cause of action." *Id. (Citing Ely v. Whitlock*, 238 Va. 670, 677 (1989)).

On the first element, plaintiffs allege that defendants' actions were "intentional and reckless" and that they "knew or should have known that severe emotional distress was the likely and probable result of their acts." (Motion for Judgment, ¶¶ 44, 45.) A plaintiff is required to allege that the defendant had the specific purpose to inflict emotional distress or that he intended his acts or conduct and knew or should have known that emotional distress would be the result. *Ely v. Whitlock*, 238 Va. 670, 677 (1989); *Womack v. Eldridge*, 215 Va. 338, 342 (1974). Thus, plaintiffs' allegations are sufficient.

On the second element, plaintiffs draw upon all of the facts alleged in their motion for judgment and contend that this conduct was "outrageous and intolerable." (Motion for Judgment, ¶ 42.) Case law sets a high burden for "outrageous and intolerable":

> Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency and to be regarded as atrocious and utterly intolerable in a civilized community.

*Russo*, 241 Va. at 27; *Ruth*, 237 Va. at 368; *Womack*, 215 Va. at 342.

*Russo* and *Ruth* were decided on grounds other than the element of "outrageous and intolerable." *See, e.g., Russo, supra*, at 27. ("We will . . . assume without deciding . . . [the] outrageousness required . . . ."). *Womack* is the only Virginia decision that reaches a ruling on the second element. In *Womack*, 215 Va. at 339, the plaintiff was employed at a roller skating rink where a suspect was arrested for two counts of child molesting that occurred elsewhere. The suspect's attorney hired a private investigator who tricked plaintiff into posing for a photograph. *Id.* The photograph was passed to the Commonwealth's Attorney, causing the plaintiff to be brought to court by a detective, questioned several times by police, called to testify at the suspect's preliminary hearing, summoned to appear before the grand jury, and summoned to each of the suspect's several trial dates. *Id.* at 339-40.

The plaintiff in *Womack* had no connection to the child sex abuse cases other than the fact that he worked where the suspect was arrested. Both victims viewed the photograph of plaintiff before it was passed to the Commonwealth's Attorney and stated that the plaintiff was not the one who molested them. *Womack*, 215 Va. at 339, 342. The plaintiff sued the private investigator for intentional infliction of emotional distress. The court held that reasonable persons could differ as to whether the defendant's conduct was extreme and outrageous and reinstated a jury verdict for the plaintiff. *Id.* at 342-43.

Evaluation of the sufficiency of plaintiffs' allegations on the second element is difficult. *Womack* is the Virginia Supreme Court's only guidance.[2] The crime of arson is not as socially repugnant as child sex abuse, but it carries similarly harsh penalties. In the instant case, plaintiff was tried on felony criminal charges, in addition to being threatened with a denial of insurance coverage, placed in severe financial straits, and losing his livelihood and home, as well as his reputation in the community. In *Womack* charges were never even filed against the plaintiff. Although it could be argued that the above go to the severity of the distress, in light of the foreseeability of the results, the court believes they are factors as well in weighing the outrageousness of the defendant's conduct. It is a close issue, in sum, but the court holds that a demurrer is not appropriate on the element of "outrageous and intolerable."[3]

On the third element, plaintiffs allege that their injuries were "proximately caused by defendants' acts." (Motion for Judgment, ¶¶ 4-5.) This allegation suffices to withstand a demurrer.

On the fourth element, plaintiffs make numerous allegations of emotional distress. The requirement of "emotional distress" also sets a high burden. In *Russo*, 241 Va. at 25, the plaintiff was a single mother who went on one date with the defendant and then received 340 "hang-up" calls from him over a two-month period, and defendant was convicted of

---

[2] However, the dissent in *Russo* by three justices stresses that the acts in *Russo* met the outrageousness test in their view, where plaintiff hung up after 340 telephone calls to the home of a single parent of a 14-year-old daughter in a two-month period and was convicted of making an annoying telephone call to the plaintiff. *Russo, supra,* at 28-29 (Lacy, J., *dissenting*).

[3] The illustrations in the *Restatement (Second) of Torts* § 46 at 72-79 are helpful in determining what level of conduct is sufficiently outrageous to meet the test. A number of those that are stated to be sufficient for liability are no worse than the allegations made against the defendants in this suit.

the misdemeanor of making annoying telephone calls for the same behavior. In her pleading, the plaintiff alleged "severe emotional distress," including that "she was nervous, could not sleep, experienced stress and 'its physical symptoms,' withdrew from activities, and was unable to concentrate at work." *Id.* at 28.

In a 4 to 3 decision, the court held that the trial court correctly sustained the defendant's demurrer, noting that there was no claim of any objective physical injury caused by the stress, any seeking of medical attention, confinement at home or in a hospital, or any loss of income. *Id.* The court held that "the alleged effect on the plaintiff's sensitivities is not the type of extreme emotional distress that is so severe that no reasonable person could be expected to endure it." *Id.*

In the instant case, plaintiffs have alleged numerous injuries. (Motion for Judgment, ¶¶ 41, 43, 71-74, 76-83.) The alleged injuries include that they needed psychiatric and medical attention and that they could not continue in their jobs, thus suffering loss and diminution of income. These are the types of allegations that the Virginia Supreme Court had noted as missing in *Russo*. Plaintiffs have not alleged objective physical injury, but the Virginia Supreme Court has previously held that objective physical injury is not required for recovery in intentional infliction of emotional distress cases. *Womack*, 215 Va. at 342. Plaintiffs do not allege confinement but do allege that they were forced to relocate from Kenbridge. The court finds that, taken as a whole, plaintiff R. T. Harris' allegations of damages are distinguishable from *Russo* and sufficient to withstand a demurrer, and thus, defendants' demurrer to Count III as alleged by R. T. Harris is overruled.

This court must decide, however, whether the members of R. T. Harris' family, his wife and children, may recover for their emotional distress. Even if the actions of the defendants caused them severe emotional distress, were the defendants' actions, as to the family members, intentional and ones they should have known would harm the family members? Even if that is the case, however, the issue of proximate causation, as a policy matter, remains. Would the Virginia Supreme Court allow recovery, or would it find the accusation too remote for recovery? As a policy matter, should a wrongdoer be held accountable for emotional harm even to those with whom he has no direct dealings? Should family members be allowed to recover if a defendant should have known that his actions toward a particular person would cause severe emotional distress to the person's

family? As a policy matter, how far should the courts extend liability for such actions?

The *Restatement (Second) of Torts*, § 46, comment 1, at page 79, states that some cases have extended liability to allow recovery by family members where the family members are *present* when the injury occurs as distinguished from those who discover later what has occurred. As alleged in this suit, the actions of the defendants were all directed at R. T. Harris.[4] Those allegations include the denial of insurance coverage, the report to the police, the negligent investigation, and the cooperation with the criminal prosecution of R. T. Harris. Nowhere do the plaintiffs allege that anyone else in the family was present for those acts, which were all directed at R. T. Harris. The Virginia Supreme Court's reliance in *Womack, supra*, at 341, on Section 46 of the *Restatement (Second) of Torts* and the cases cited therein suggests that that court would not allow recovery to family members under circumstances as alleged here. Indeed, the comment to that section suggests that such recovery should not be allowed.

Thus, the defendants' demurrers to Count III, as alleged by plaintiffs other than R. T. Harris, are sustained.

### Count IV: Malicious Prosecution

Plaintiffs allege a cause of action for malicious prosecution against defendants USAA, Riddleburger, and Double K.

### A. Sufficiency of Plaintiffs' Allegations

The essential elements of a cause of action for malicious prosecution are: (1) that the prosecution was set on foot by defendant and terminated in a manner not unfavorable to plaintiff, (2) it was instituted or procured with the cooperation of the defendant, (3) was without probable cause, and (4) was malicious. *Oxenham v. Johnson*, 241 Va. 281, 287 (1991).

Probable cause exists when "the facts and circumstances known, or made known, to the prosecutor are sufficient to justify a prudent and

---

[4] It is true that the acts alleged here are of a continuous nature over a period of time, as opposed to a one-time only occurrence and that their impact on the entire family could arguably be foreseen. However, it is this court's opinion that policy considerations would lead the Virginia Supreme Court to omit family members' recovery under this "disfavored" tort except for the narrow circumstance allowed under the *Restatement*, where the family members are present, in order to further assure that the defendants' actions indeed had an impact on them.

reasonable man in the belief that an accused is guilty of the crime charged." *Giant of Virginia v. Pigg*, 207 Va. 679, 684 (1967).

*Legal* malice, the last element of the claim, can be inferred from the lack of probable cause in a prosecution instigated by the defendant. *Oxenham*, 241 Va. at 288-89. Legal malice will support an award of compensatory damages, which may include property loss, necessary expenses, insult, pain, mental suffering, and injury to reputation. *Pigg*, 207 Va. at 685.

However, a recovery of punitive damages in an action for malicious prosecution requires a showing of *actual* malice. *Oxenham*, 241 Va. at 287. Actual malice can be shown by a "reckless and wanton disregard of defendant's rights." *Oxenham*, 241 Va. at 289. Actual malice cannot be inferred from a lack of probable cause, but rather must be proven by demonstrating "personal ill will, or . . . circumstances of insult, rudeness, or oppression." *Giant*, 207 Va. at 686.

Because of the importance of criminal prosecutions in maintaining an orderly society, "[m]alicious prosecution actions are not favored in Virginia, and the requirements for maintaining such actions are more stringent than those applying to most other tort claims." *Lee v. Southland Corp.*, 219 Va. 23, 26 (1978). But in spite of this disfavored status, there are not any heightened burdens of pleading.

Allegations of a favorable termination, a lack of probable cause, and maliciousness are straightforward, and plaintiffs' allegations on these elements are sufficient.[5] (*See* Motion for Judgment, ¶¶ 46, 49-50.)

The required elements of "set on foot by defendant" and "instituted or procured with the cooperation of defendant" are more problematic. The Virginia Supreme Court once summarized the quandary:

> There can be no malicious prosecution without the machinery of the law, and it is, therefore, of course, true that the officers of the law must be the final and effective actors. The question in every case is, was the prosecution instigated or brought about by the cooperation of the defendant?

*Clinchfield Coal Corp. v. Redd*, 123 Va. 420, 431 (1918).

---

[5] There is an issue that has not been addressed by the parties as to whether the finding of probable cause by a grand jury issuing an indictment or magistrate issuing a warrant or a district court judge at a preliminary hearing sending the matter on to Circuit Court for trial negates the third element. However, that may be a matter of evidence at trial.

When the defendant secures or swears out an arrest warrant, his participation is sufficient for a malicious prosecution action to lie. *Bain v. Phillips*, 217 Va. 387, 392, 393-94 (1976) ("secured the issuance" of arrest warrants); *Niese v. Klos*, 216 Va. 701, 702, 704 (1976) (swore out arrest warrant).

Where the defendant does not take any active role in the prosecution but rather cooperates at the request of police or prosecutors, his participation is not sufficient for the action to lie. *King v. Martin*, 150 Va. 122, 126-28 (1928) (made identification at lineup, testified at grand jury and at trial); *Marsh v. Commercial & Savings Bank of Winchester*, 265 F. Supp. 614, 618-19 (W.D. Va. 1967) (gave description, assisted F.B.I. artist, made photo and lineup identifications).

Virginia case law does not provide any guidance in between. One commentary states:

> A distinction must be taken between actually instigating or procuring the institution of criminal proceedings and merely laying information before a law enforcement official without in any way attempting to influence his judgment. Of course, if the informer knew the facts stated were false, it is clear that the attempt was made to influence the officer's judgment, and the informer is, therefore, responsible for such subsequent action as may be taken.

Harper, James & Gray, *The Law of Torts*, § 4.3, at 415 (2d ed. 1994).

Plaintiffs' allegations on the elements of "set on foot by defendant" and "instituted or procured with the cooperation of defendant" are as follows:

> 14. USAA and its agent, Riddleburger/Double K, failed to conduct an independent and objective investigation . . . .
>
> 15. USAA and its agent, Riddleburger/Double K, maliciously, recklessly, and wantonly instigated criminal prosecution against plaintiff R. T. Harris and did actively assist the Commonwealth in all phases of its investigation of the fire and instigation of prosecution. It provided the Commonwealth with laboratory reports and other evidence, ignoring the interests of the insureds.
>
> 16. Subsequent to the investigation by Riddleburger/Double K, plaintiff, R. T. Harris, was indicted for arson and brought to trial in Mecklenburg County. Defendants, Riddleburger/Double K and employees of USAA testified as witnesses for the prosecution against R. T. Harris. Riddleburger and Mike Barrett,

Claims Manager, USAA, were at all times during the trial paid by USAA . . . .

18. USAA would have benefitted from a conviction of R. T. Harris because it would not have been required to pay the claim. USAA and its agent, Ken Riddleburger and Double K, acted in assisting the prosecution with the knowledge and intent that a conviction would assist them in avoiding the payment of the claim . . . .

47. This prosecution was set on foot by the defendants, jointly and severally. [Amended 7/21/94].

48. This prosecution was instituted or procured by the defendants, jointly and severally. [Amended 7/21/94].

(Motion for Judgment.)

These allegations do not pinpoint the specific nature of defendants' role in the criminal prosecution of Mr. Harris. But under the Virginia standard for reviewing a motion for judgment on demurrer, *see Luckett, supra,* the pleaded facts, the impliedly alleged facts, and the facts "which may be fairly and justly inferred" all combine to create an allegation that defendants conducted a biased, result-oriented investigation; turned over the results of the investigation to law enforcement officials; eagerly supported and encouraged the prosecution of the charges; and then testified about the misleading results of their investigations at R. T. Harris' criminal trial.

Because of the implied allegations and the inferences that may be drawn, the court holds that this count survives defendants' demurrer.

Plaintiffs' plea for punitive damages includes the required allegation of actual malice. (Motion for Judgment, ¶ 50.) However, any fair reading of plaintiffs' pleadings and plaintiffs' admission at oral argument leads to the conclusion that defendants did not act with personal "ill will," intending to have the Harrises suffer. Rather, the allegation is that defendants determined that the fire was intentionally set and then negligently conducted an investigation that led to the erroneous conclusion that Mr. Harris was the agent of arson.

There are no allegations of circumstances of "rudeness, insult, or oppression," in plaintiffs' pleading. Consequently, defendants' demurrer is granted as to punitive damages with leave of plaintiffs' to refile within two weeks of receipt of this opinion, an amended motion for judgment for punitive damages under the malicious prosecution count if they be so inclined.

The demurrers are sustained, however, without leave to amend, as against all the plaintiffs except R. T. Harris, as none of the others was prosecuted for any criminal charge, a necessary element of proof of malicious prosecution.

## B. *Defendants' Invocation of the Arson Reporting Immunity Act*

Defendants USAA, Riddleburger, and Double K contend that the Virginia Arson Reporting Immunity Act renders them absolutely immune from plaintiff R. T. Harris' civil action for malicious prosecution.

> A. Any [fire or law enforcement] agency may in writing require an insurance company to release to the requesting agency any or all relevant information or evidence deemed material by the requesting agency in the insurance company's possession relating to the fire loss in question. Relevant information may include, but shall not be limited to . . . .
>
> 4. Material relating to the investigation of the loss, including statements of any person, proof of loss, and any other evidence relevant to the investigation.
>
> B. 1. When an insurance company has reason to believe that a fire loss in which it has an interest may be of other than accidental cause, then, for the purpose of notification and for having such fire loss investigated, the company shall, in writing, notify an authorized agency and provide it with any or all material developed from the company's inquiry into the fire loss.
>
> 2. When an insurance company provides any one of the authorized agencies with notice of a fire loss, it shall be sufficient notice for the purpose of this article . . . .
>
> E. Any insurance company, or person acting in its behalf or authorized agency who releases information, whether oral or written, pursuant to subsections A or B of this section shall be immune from any liability arising out of a civil action, or penalty resulting from a criminal prosecution unless actual malice on the part of the insurance company or authorized agency is present.

Va. Code Ann. § 27-85.5 (Michie 1993). The Act does not define "insurance company." Most insurance companies act through outside agents in investigating insurance claims, including arson. Presumably, the legisla-

ture intended to include the agents of an insurance company in the protection offered by this statute.

The defendants submitted a letter of June 18, 1992, from the Lunenburg County Commonwealth's Attorney to Double K, Inc., that requests a copy of Ken Riddleburger's investigative report. This letter has not been authenticated and cannot be considered for purposes of the demurrers.

In addition, the Virginia Arson Reporting Immunity Act does not provide complete immunity for all of the conduct that plaintiffs allege defendants committed. Even if the letter from the Commonwealth's Attorney is authenticated, his request does not protect any communications that occurred before his letter was written on June 18, 1992. Additionally, the Commonwealth's Attorney's letter only requests Double K's investigative report, and thus the immunity created by the Arson Reporting Immunity Act is no broader than the investigative report. The protection afforded by subsection B of the Act is merely for giving notice in writing.

Finally, the Act does not provide immunity for releases of information made with actual malice; although the demurrer to the plaintiffs' allegation of actual malice has been sustained, leave to amend has been granted. However, even if actual malice is not successfully repleaded, the above reasons suffice to take at least some of plaintiffs' allegations outside the immunity offered by the Act. For the above reasons, the court holds that the immunity afforded by the Virginia Arson Reporting Immunity Act is not complete, even if the letter from the Lunenburg County Commonwealth's Attorney is authenticated.

The court overrules defendants' demurrer to Count IV of plaintiff R. T. Harris' motion for judgment.

### Count V: Bad Faith

Plaintiffs allege a cause of action in tort for bad faith against defendants USAA, Riddleburger, and Double K.

The Virginia Supreme Court has not ruled on the existence of a tort action for bad faith performance in insurance contracts, including bad faith refusal to pay a claim. The Fourth Circuit has, after examining Virginia tort law, contract law, and the state insurance code, determined that there is no such cause of action in tort in Virginia. *A & E Supply Co. v. Nationwide Mut. Fire Ins. Co.*, 798 F.2d 669, 676-78 (4th Cir. 1986), *cert. denied*, 477 U.S. 1091 (1987); *Accord, Ryder Truck Rental, Inc. v. UTF Carriers, Inc.*, 790 F. Supp. 637, 640 (W.D. Va. 1992).

Plaintiffs urge that the court recognize a cause of action in tort notwithstanding the federal court decisions. (Motion for Judgment, ¶ 54; Plaintiffs' Memorandum, p. 56.)

The question of whether the contract itself imposes a duty of good faith casts light on whether a breach of that duty of good faith would constitute a breach of contract, rather than an independent tort for bad faith refusal to pay by an insurance company.

The Virginia Supreme Court has found, in a third-party context such as liability insurance, a duty of good faith in performance of an insurance company's duties. *Erie Ins. Group v. Hughes*, 240 Va. 165, 168-69 (1990); *Reisen v. Aetna Life & Cas. Co.*, 225 Va. 327, 335 (1983); *Aetna Cas. & Surety Co. v. Price*, 206 Va. 749, 761 (1961).[6]

While this contract does not fall within the scope of the Uniform Commercial Code in effect in Virginia, that code does legislatively impose a duty of good faith on the performance of all contracts falling under the U.C.C. Virginia Code § 8.1-203. One circuit court in Virginia has stated broadly that every contract contains an implied duty of good faith in its performance. *Stepp v. Outdoor World Corp.*, 18 Va. Cir. 106, 111 (1989) (real estate contract). *Michie's Jurisprudence* uses similar broad language: "[T]he law implies a covenant of good faith . . . in every contract . . . ." 4B M.J., *Contracts*, 20 (Cum. Supp. 1993). This is consistent with the *Restatement (Second) of Contracts* § 205 (1981), which states the majority opinion in courts nationwide. In addition, the legislature in Virginia in essence has mandated that an insurance company act toward its insured in good faith. Va. Code § 38.2-510(6). Provisions of the insurance sections of the Virginia Code have often been ruled to be implied conditions of an insurance contract by the Virginia Supreme Court. *See, e.g., State Farm v. Duncan*, 203 Va. 440 (1962). The Fourth Circuit found that the responsibility set out in Virginia Code § 38.1-52.9(6) (now § 38.2-510(6)), parallels an insurer's contractual duty of good faith. *A & E, supra*, 798 F.2d at 676.

Based on much of the authority cited above, the Fourth Circuit opined that the Virginia Supreme Court would imply such a duty of good faith on

---

[6] The Fourth Circuit's distinction in *A & E, supra*, at 323-24, is logical: in the third-party context, the insurer has control over the defense of any claim against the insured within the policy coverage. That special relationship gives rise to a right of tort recovery beyond the contract. No such special considerations apply in the insurer's duty to compensate the insured for direct losses under their contract.

all contracting parties in performing duties under an agreement. *A & E Supply Co., supra,* 798 F.2d at 676. Bad faith conduct gives rise to a contract action, not a tort suit, as the duty arises from and extends only to the agreement itself. *Id.* at 676.

Like *A & E Supply,* this case also involves the application of Virginia law in a first-party insurance context. It is the opinion of this court, after careful consideration of what authority exists in Virginia and nationwide, that the Virginia Supreme Court would imply a duty of good faith in a first-party insurance context but would find the breach of same to give rise to a claim for breach of contract, but not a tort claim. Thus, any breach of good faith by the defendants would breach USAA's contract with Mr. and Mrs. Harris but would not constitute an independent tort.

For the reasons stated in *A & E Supply, supra,* the court holds that there is no tort cause of action for bad faith in Virginia, and thus defendants' demurrers to this count must be sustained.

### Count VI: Conspiracy and Violation of § 18.2-499

Plaintiffs allege a conspiracy against them in violation of § 18.2-499 by defendants USAA, Riddleburger, and Double K.

Section 18.2-499 outlaws certain conspiracies; § 18.2-500 creates a remedy for the aggrieved.

> Any two or more persons who shall combine, associate, agree, mutually undertake or concert together for the purpose of willfully and maliciously injuring another in his reputation, trade, business or profession by any means whatever . . . shall be jointly and severally guilty of a Class 3 misdemeanor. Such punishment shall be in addition to any civil relief recoverable under § 18.2-500.

Va. Code Ann. § 18.2-499 (Michie 1993).

> Any person who shall be injured in his reputation, trade, business or profession by reason of a violation of § 18.2-499 may sue therefor and recover three-fold the damages by him sustained, and the costs of suit, including a reasonable fee to plaintiff's counsel; and without limiting the generality of the term, "damages" shall include loss of profits.

Va. Code Ann. § 18.2-500 (Michie 1993).

"Person" is defined to include any person, firm, corporation, partnership, or association. Va. Code Ann. § 18.2-501(b) (Michie 1993).

A long line of Virginia federal court decisions has held that the remedy available under Virginia law, specifically § 18.2-500 *et seq.* is available only when malicious conduct is directed at one's business and not at one's person. *E.g., Buschi v. Kirven,* 775 F.2d 1240, 1244, 1259 (4th Cir. 1985) (Dept. of Social Services employees). For example, the employment relationship is characterized as a personal right, not a business interest, and therefore is not remediable under § 18.2-500. *Id., Jordan v. Hudson,* 690 F. Supp. 502, 507-08 (E.D. Va. 1988), *aff'd,* 879 F.2d 98 (4th Cir. 1989) (postmaster).

The Virginia Supreme Court has consistently used the word "business" in referring to this action, even in cases subsequent to the above federal court opinions, at least implying that it agrees with the interpretation of the federal courts. *E.g., CaterCorp., Inc. v. Catering Concepts, Inc.,* 246 Va. 22, 28 (1993); *Fox v. Dease,* 234 Va. 412, 428 (1987); *Allen Realty Corp. v. Holbert,* 227 Va. 441, 449 (1984). Despite these references in Virginia cases, plaintiffs invite the court to reject the federal courts' conclusions as a misreading of the clear language of the Virginia statute. This court declines to do so, finding the reasoning of their interpretations of Virginia law to be persuasive.

Defendants' demurrer is based on the additional grounds of the doctrine of intracorporate immunity.

> [B]ecause at least two persons must be present to form a conspiracy, a corporation cannot conspire with itself . . . . [A] corporation . . . can only act through its *agents,* officers, and employees; therefore, a conspiracy between a corporation and agents of that corporation who are acting in the scope of their employment is a legal impossibility.

*Selman v. American Sports Underwriters, Inc.,* 697 F. Supp. 225, 238 (W.D. Va. 1988) (emphasis supplied). This immunity is not destroyed when a corporation and its agents are sued as individuals. *Id.*

In *Selman,* the defendants were a corporation, its president, its secretary-treasurer, its chairman of the board, and other board members. *Id.* at 228. The court ruled that the plaintiff's complaint admitted that the defendants were all acting to further the corporation's interest and granted summary judgment for the defendants. *Id.* at 238-39.

In *Fox,* the defendants were three employees of three different departments of the City of Richmond. *Id.* at 415. The court held that the doctrine applied but that an evidentiary hearing was necessary to determine

whether the defendants were acting within the scope of their employment. *Id.* at 428.

In the instant case, plaintiffs' motion for judgment repeatedly alleges Riddleburger and Double K were the agents of USAA. (Motion for Judgment, ¶¶ 13-15, 18.) Plaintiffs also allege that Riddleburger was paid for his trial testimony by USAA and that Riddleburger and Double K assisted the prosecution in order to avoid USAA's having to pay the Harris' insurance claim. (*Id.* ¶ 16, 18.) Plaintiffs make no allegation that Riddleburger or Double K acted in furtherance of any interest outside the scope of their agency with USAA and conceded at oral argument that all defendants were seeking to breach the contract, which was clearly within the scope of their employment.

The court finds both of the grounds argued by defendants to be well taken and holds that, under Virginia law, defendants' demurrers to this count should be sustained.

### Count VII: Abuse of Process

Plaintiffs allege a cause of action for malicious use or abuse of process against defendants USAA, Riddleburger, and Double K.

The essential elements of a cause of action for abuse of process are: (1) the existence of an ulterior purpose and (2) an act in the use of the process not proper in the regular prosecution of the proceedings. *Ely v. Whitlock*, 238 Va. 670, 677 (1989). The improper act must occur *after* process has been issued (an act in the use of the process). *Id.* at 676 (taking of deposition by complainant in attorney ethics case after ethics complaint was brought held sufficient to survive demurrer). *Cf., Triangle Auto Auction v. Cash*, 238 Va. 183, 186 (1989) (mere swearing out of warrants for grand larceny by check because of bad checks given in payment of a debt was held not to include any improper act *after* process had issued.). In *Donohoe Construction v. Mount Vernon Associates*, 235 Va. 531, 539 (1988), the court stated that the two prongs of the test require some perversion of a regularly issued process to accomplish some ulterior purpose for which the procedure was not intended.

Ordinarily, only a law enforcement officer or Commonwealth's Attorney or other prosecutor can use the process issued in a criminal prosecution. A private person or firm cannot be liable for abuse of process arising out of a criminal prosecution, short of an attempt to usurp the powers of law enforcement. Plaintiffs have not alleged that defendants committed any such act, nor do they allege any act after process had been issued that

might be deemed *improper* or a perversion of a legal process. The gist of the plaintiffs' allegations as to defendants' actions on the arson charge involve the procurement or setting in motion of the charge; there is no specific act other than testifying and attending trial that occurs *after* the warrants are secured.

Without the allegation of subsequent actions that were improper or a perversion of legal process — and testifying and attending do not qualify as such actions — defendants' demurrer as to Count VII must be sustained. However, the court grants plaintiffs two weeks from this opinion to amend this count to so allege, if they be so inclined.

### Count VIII: Breach of Non-Waiver Agreement

Plaintiffs allege a cause of action for breach of a non-waiver agreement against defendant USAA.

The essential elements of a cause of action for breach of contract are: (1) a legal obligation of the defendant to the plaintiff, (2) a violation or breach of that right or duty, (3) and consequential injury or damage to the plaintiff. *Westminster Investing Corp. v. Lamps Unlimited*, 237 Va. 543, 546 (1989).

Plaintiffs allege only a breach and damages in support of this count. Plaintiffs allege that defendant USAA committed a breach when it "failed to conduct a full investigation" and "acted negligently, maliciously, recklessly, and wantonly in its investigation" and that said breach resulted in damage to plaintiffs. (Motion for Judgment, ¶¶ 61-63.)

Plaintiffs make no allegation of a legal obligation and thus fail to satisfy the first element of this cause of action. Plaintiffs merely allege that the non-waiver agreement "permitted USAA to conduct a full investigation of the fire." (Motion for Judgment, ¶ 60.) The operative word is "permitted." Read as a whole, the non-waiver agreement does not create a contractual obligation or duty of full investigation on the insurance company, but rather the plaintiffs in the agreement recognize the right of the insurer to carry out such an investigation.

The lack of any allegation of a legal obligation or duty requires that the court sustain defendant USAA's demurrer to Count VII of plaintiffs' motion for judgment.

### Count IX: Deceptive and Unfair Consumer Practices

Plaintiffs allege that defendant USAA set the limits on plaintiffs' insurance policy higher than it ever intended to pay out. (Motion for Judgment,

¶¶ 64-66.) Plaintiffs allege that this practice "is deceptive and unfair and violates state and federal statutes protecting consumers." (Motion for Judgment, ¶ 67.) Plaintiffs do not cite any specific statutes.

The exclusions in the Virginia Consumer Protection Act include the following:

Nothing in this chapter shall apply to . . . .

D. . . . insurance companies regulated and supervised by the State Corporation Commission or a comparable federal regulating body.

Va. Code Ann. § 59.1-199 (Michie 1993). Thus, the Consumer Protection Act does not offer plaintiffs a remedy.

The Virginia Unfair Insurance Practices Act, §§ 38.2-500 to 38.2-516, does not establish a private cause of action. *A & E Supply Co. v. Nationwide Mut. Fire Ins. Co.*, 798 F.2d 669, 676 (4th Cir. 1986), *cert. denied*, 479 U.S. 1091 (1987). Instead, the State Corporation Commission is charged with enforcing the Unfair Insurance Practices Act. *Id.* at 675; Va. Code Ann. § 38.2-515 (Michie 1994).

Earlier cases from the federal district courts in the Western District of Virginia had found such a private cause of action to be implied in the Virginia Unfair Insurance Practices Act. *Morgan v. American Family Life Assurance Co.*, 559 F. Supp. 477, 485 (W.D. Va. 1983) (Judge Turk); *A & E Supply Co. v. Nationwide Mutual Fire Ins. Co.*, 612 F. Supp. 760, 774 (W.D. Va. 1985) (Judge Williams), *reversed*, 798 F.2d 669 (4th Cir. 1986), *cert. denied*, 479 U.S. 1091 (1987). However, the trial court's holding on this issue in *A & E* was reversed, and the holding in *Morgan* effectively overruled by the Fourth Circuit's opinion in *A & E, supra*, 798 F.2d at 674.

This court finds the Fourth Circuit's extensive exposition on the subject in *A & E* to be quite persuasive. *Id.* at 673-76. That appellate court first cites the Virginia Supreme Court's Doctrine of Implied Powers as to statutory interpretation. Where a power is expressly set out in a statute — here, enforcement powers given to the State Corporation Commission (SCC), with review by the Virginia Supreme Court — another power will not be inferred. *Id.* at 673 (*citing Commonwealth. v. County Board of Arlington County*, 217 Va. 558 (1977)). The regulation of unfair insurance practices by the SCC is part of a complex statutory scheme of regulation covering over 400 pages of the Virginia Code. If the SCC has exclusive powers to enforce the prohibition of unfair practices, it will lead to consistency of application of such provisions. Varying jury verdicts as to what constitutes

such a violation, on the other hand, may well lead to inconsistencies and interference with Virginia's overall statutory scheme. *Id.* at 674-75.

Many other appellate courts, whose states have adopted similar model acts to regulate insurance practices, have declined to imply a private right of action under these regulatory statutes, for reasons the Fourth Circuit predicted the Virginia Supreme Court would adopt. *Id.* at 675. The court pointed in addition to the Virginia statute's similarity to the Federal Trade Commission Act (FTC Act), whose prohibitions the Virginia Unfair Insurance Practices Act tracks; no private cause of action has been found to be implied in the FTC Act. *Id.* at 675-76.

Lastly, the Fourth Circuit in *A & E* pointed out that a 1986 amendment to the Virginia Act, § 38.2-510(B), specifically provides that "No violation of this section shall of itself be deemed to create any cause of action in favor of any person other than the Commission . . . ." although it goes on to provide that no rights are impaired by the subsection. *A & E, supra,* 798 F.2d at 676, n. 7.

Although plaintiffs allege that USAA's acts violated federal statutes protecting consumers, they failed to cite any particular acts or remedies in their motion for judgment or memoranda or during argument. Plaintiffs have not pointed to any common law right recognized by case law or to any statute creating a private remedy of which they can avail themselves.

Consequently, defendant USAA's demurrer to Count IX is sustained.

### Conclusion

Count I of plaintiffs' motion for judgment, alleging a cause of action for breach of contract, withstands defendant USAA's demurrer, except to the extent that it prays for punitive damages. The demurrer of defendants Riddleburger and Double K is sustained.

Plaintiffs withdrew Count II during argument.

Count III of plaintiffs' motion for judgment, alleging a cause of action for intentional infliction of emotional distress, presents a very close issue on "outrageous and intolerable" conduct but withstands a demurrer as to R. T. Harris' claim. As to plaintiffs other than R. T. Harris, Count III is dismissed for failure to state a cause of action recognizable in Virginia.

Count IV of plaintiffs' motion for judgment, alleging a cause of action for malicious prosecution, presents a very close issue on whether defendants "set on foot" and cooperated to "institute or procure" the prosecution but withstands a demurrer as to the allegations by R. T. Harris, except to the extent it prays for punitive damages, to which extent the demurrer is

sustained with leave for plaintiffs to file an amended motion for judgment. As to the allegations by plaintiffs other than R. T. Harris, the demurrer to Count IV is sustained, and the Count is dismissed as to those plaintiffs.

Count V of plaintiffs' motion for judgment, alleging a cause of action in tort for bad faith performance of the contract by refusal to pay, does not state a recognized cause of action under Virginia law and is dismissed.

Count VI of plaintiffs' motion for judgment, alleging a cause of action for conspiracy and violation of § 18.2-499 against all three defendants, is not within the limits of the statute and is dismissed.

Count VII of plaintiffs' motion for judgment, alleging a cause of action for abuse of process does not allege all of the essential elements and is dismissed.

Count VIII of plaintiffs' motion for judgment, alleging a cause of action for breach of non-waiver agreement against defendant USAA, does not allege all of the essential elements of an action for breach of contract and is dismissed.

Count IX of plaintiffs' motion for judgment, alleging a cause of action for "deceptive and unfair consumer practices" against defendant USAA, does not state a recognized cause of action or fall under a statute that creates a private cause of action. It is dismissed.